222 So.2d 318 (1969)
Lucille DeLaune DAIGLE, Plaintiff-Appellant,
v.
Gerald Joseph DAIGLE, Defendant-Appellee.
No. 7648.
Court of Appeal of Louisiana, First Circuit.
April 14, 1969.
Rehearing Denied May 26, 1969.
Writ Refused June 27, 1969.
*319 Donald T. W. Phelps, of Seale, Smith, Baine & Phelps, Baton Rouge, for appellant.
J. Peyton Parker, Jr., of Parker & French, Baton Rouge, for appellee.
Before LANDRY, SARTAIN and MARCUS, JJ.
SARTAIN, Judge.
Mrs. Lucille DeLaune Daigle appeals from a judgment of the district court which granted her husband a divorce on the grounds of adultery and custody of the couple's two minor children.
For reasons hereinafter stated, we affirm the portion of the judgment pertaining to the divorce but reverse the decision which denied the mother the custody of the children.
The parties in this litigation were married on September 12, 1964 in West Baton Rouge Parish, where the matrimonial domicile continued to remain. Of this marriage two children were born, both boys. At the time of the trial the oldest child was three years of age and the youngest was eighteen months.
Initially, appellant filed a suit for a separation on the grounds of cruelty. Appellee filed a general denial coupled with a reconventional demand for a divorce on the grounds of adultery and in the alternative a separation grounded on abandonment. In both instances he alleged appellant's unfitness and sought the custody of the children.
On January 17, 1968, appellant left the matrimonial domicile and moved into an apartment. She took the two small children with her. She is alleged to have committed adultery with the same corespondent on the nights of January 19, 20, 21 and 22, 1968, when she was visited by him at her apartment.
Appellee testified that on each of these nights he observed the corespondent entering his wife's apartment. During each of these visits, the lights were observed to go off leaving the apartment in total darkness, later the lights were turned on and the man left. He stated that the corespondent's departure was around midnight or later each night.
Appellee did not go into detail concerning the time of the corespondent's arrival at his wife's apartment, the time the lights went out, the times they went on, and the man's departure. However, on each of these nights appellee was accompanied by private investigators and during the course of their testimony they did go into such details. While there are some discrepancies in these details, we cannot say that the discrepancies were of such consequence so as to negative the overall effect of the evidence adduced by appellee in support of his allegations of adultery. We also see no useful purpose to be derived by specifying these discrepancies.
Counsel for appellant contends that the evidence does not support the conclusion that adultery was committed. He cites Hayes v. Hayes, 225 La. 374, 73 So.2d 179; Coston v. Coston, 196 La. 1095, 200 So. 474; and Karl v. Karl, La.App., 191 So.2d 674. These cases announce the well established rule that where circumstantial evidence alone is relied upon in cases of this type, the proof must be so convincing as to exclude any other reasonable hypothesis *320 but that of guilt. Applying this requirement of proof, we note that we have a situation where on four successive nights appellant had the same male visitor in her apartment. She admits to these visits, confirms the approximate hours thereof, but denies that on any of these occasions was her apartment in total darkness or that she committed adultery. She states that the ceiling light in the living room was turned off but the other lights in the room remained on. She claims further that the apartment had only one bedroom which was shared by her with the children and that the lights in the bedroom were off because the children were asleep. This is frankly the extent of her explanation.
We recognize that the indictment of adultery is a grievous one but we also recognize that adultery in most cases is proved by circumstantial evidence. Even considering the discrepancies in the testimony of appellee's proof, we are not prepared to hold that the trial judge committed manifest error in granting the divorce. Here we have not one night, or two nights, but four consecutive nights. The accumulative effect of all of these circumstances support the finding of adultery.
Now as to the issue of custody, we must disagree with the district judge. In so doing we are cognizant that in matters of child custody, the trier of fact is accorded considerable discretion and his discretion should not be set aside absent a clear showing of an abuse of such discretion. This recognizes the fact that it is difficult for the written record to reflect the demeanor, emotions and reactions of the witnesses.
Mindful of the above admonition to ourselves to tread lightly, we look to this record for it is within its limitations that we must decide whether or not the discretion exercised by the trial judge is proper.
The trial judge in his written reasons stated:
"This is a case of a girl being reared in a well respected christian home, but because of her immaturity, selfishness and poor attitude she has done things she should not have for the best interest of the children, her family and herself. She shows no remorse whatsoever for the wrongs committed by her and in court she exhibited no feeling whatsoever for her heartbroken mother whose demeanor and actions spoke much louder than her words.
The demeanor and attitude of the said defendant in reconvention during the trial was to the effect that it is her business and solely her business what she does or may do and regardless of what she has done or may do she is entitled to the custody of the two children of the marriage and she is going to get them. She impressed the court as being one not to heed the suggestions, advice or recommendations of anyone.
Wherefore the court is of the definite opinion that she needs to mature, accept her responsibilities and change her actions and attitude before she is given custody of the children for their best interest and also for her own best interest. Furthermore, if the custody is given to the more mature and responsible father, whose parents, will assist in given (sic) the children the necessary discipline, love, care and attention, there will be no need to place them in a day care center five days each week.
The court is well aware that under the laws of this state the mother is usually entitled to and is given the custody of the children of the marriage when there is a separation and this rule has been applied where the wife is guilty of adultery. However there are exceptions when it is shown to be to the best interest of the children as in this case.
There is no doubt that the mother is capable, if she desires, of properly maturing and straightening out her life, at which time she could be granted custody *321 of said children. For the present it is to the best interest of the children and their said mother that the custody be granted to the father and a judgment will be decreed and signed to that effect."
Our appreciation of the record (which consists of one hundred pages of testimony taken at a hearing which lasted but three hours) does not support the conclusion to deprive appellant custody of her children.
As stated above, appellant left the matrimonial domicile on January 17, 1968. She stayed in the apartment one week, then moved into the home of her parents where she has remained. She filed suit on March 6, 1968. Appellee filed his answer and reconventional demand on March 11, 1968. The case was tried on the merits on May 29, 1968 and judgment was rendered June 28, 1968. Throughout this period of time the children resided with her. There were no rules for temporary custody, child support, etc. The sole basis for denying appellant the custody of her children must be based entirely on her moral unfitness. We say this because physical care and attention given by her to the children are not questioned. On one occasion after she moved to the home of her mother, one of the children was ill and appellant had to give up her employment to remain with the child.
Prior to the separation, both appellee and appellant worked in Baton Rouge and commuted to and from their employment together. The earnings were kept in a common account. While appellee and appellant were so employed the children were first cared for by an aunt and then later were placed in a day nursery.
Appellee contends that during the last six months prior to the separation his wife went to four parties given by or for the personnel of her employer. On one of the occasions she did not return home until 4:00 A.M. The dates of these parties are not given. However, on the late occasion, appellant stated that it was a party given for her cousin at an apartment of four of her friends. It is particularly noted that she was reached at this apartment by phone by appellee who was concerned about the late hour.
Appellant stated she left her husband because he constantly criticized her. Both acknowledged that on the morning of the separation, they discussed her leaving. Appellee testified that on this occasion appellant admitted to "having an affair". Appellee further testified that on a later occasion when he sought a reconciliation, appellant again admitted that she could not because of these previous "affairs". Appellee interpreted "affairs" as involving sex relations. Appellant denies any "affairs" and particularly sex relations. Of particular significance here is the fact that these discussions did not concern nor make mention of the corespondent. This testimony uncorroborated as it is cannot be accepted as supportive of the proposition that appellant was engaged in extra-marital affairs prior to the separation.
Other than the four nights in the apartment the record fails to show any other immoral conduct on the part of appellant. She has seen the corespondent since the separation but it has been in the daytime. On one occasion they drove to St. Francisville and on another to Bogalusa. The corespondent also resides in Port Allen with his mother. Appellee admitted visiting in his home in the presence of his mother and on one of these occasions he was observed leaning into appellant's car and kissing her goodby.
The fact that appellant did not go out or date at night following the separation was confirmed by her mother. The record is totally silent with respect to any improper conduct on the part of appellant prior to the separation save on that one occasion when she did not come in until four o'clock.
The trial judge commented on the significance of appellant's mother's actions at the trial and stated "her demeanor and actions spoke much louder than her words". *322 This undoubtedly was in reference to Mrs. DeLaune's response to a question by appellee's attorney, "Do you think that your daughter should be made custodian of the children?" There was an objection on the grounds that the question called for an opinion. The objection was overruled permitting the testimony to "go to the effect than the admissibility". The question was rephrased, "Do you think that the children would be better off being given custody to your daughter?" She answered, "What do you mean? How do I answer I mean, I don't quite understand it?" The question again, "Do you feel that your daughter should be given custody of the children?" She said, "I don't know if I feel that I can answer that. Do I have to answer?" Then the court asked, "Is it just that you do not wish to answer, Mrs. * * *" and she responded, "Well, it puts me on a spot where I really don't know what I should do. I mean, I'm her mother." * * * "Regardless of what she's done, regardless of how I feel, regardless of what she feels, I'm her mother." Then the court stated to counsel, "I would suggest that you do not ask any more concerning that at this time."
We can understand Mrs. DeLaune's hesitancy but we do not know her opinion and more particularly upon what facts such opinion would have been based. Obviously, no one can be expected to condone or to treat lightly the fact that appellant was visited on four consecutive nights at her apartment four months previously. Is this what Mrs. DeLaune had in mind? We do not know and the record doesn't reveal it.
The trial judge in his written reasons makes reference to appellant's immaturity, selfishness and poor attitude. We do not find this reflected in the record. He further states that she showed no remorse for the wrongs committed. Appellant denies these wrongs. The trial judge further stated that during the course of the trial appellant impressed him as one not to heed the suggestions, advice or recommendations of anyone. We find no suggestions, advice or recommendations in the record either given to or not heeded by appellant.
A further reason given by the trial judge for awarding custody to the father, whose parents would assist, is that it would not be necessary for the children to be kept in a day care center while the mother worked. The record clearly shows that appellant, with her husband's consent, began working the previous July for the express purpose of assisting with the family expenses. The children were first cared for by an aunt. When the aunt became ill the children were placed in the local day care center. Both parents continued to work. This decision was also mutually agreed upon and no objection at that time was raised by appellee.
There is no question as to the ability of appellee's parents to care for these children or their desire to do so. However, this is not the question. The question is whether or not under the particular facts of this case the children should be removed from their mother.
It is well recognized that ordinarily it is in the best interest of small children to be placed with the mother. This is particularly true when the children are as young as they are here.
We agree that the mother erred. However, her principal transgressions were committed within the period of January 19 to January 22, 1968. This is not the usual case where the mother has shown a pattern of behavior of such a nature and over a protracted period of time that her unfitness is a foregone conclusion. Here she cared, and properly so, for her children long before this week in January and for the five months that followed. It is to her credit that she remained in the apartment for only one week and then moved to her mother's. It is also to her credit that she worked and supported the children after she left her husband. She says she loves and wants her children and there is nothing to indicate to the contrary.
*323 The trial judge concluded that the mother was capable of caring for the children and "straightening out her life" if she desired to do so, "at which time she could be granted the custody of said children". We believe she should be given the opportunity now while they are so young.
The matter of custody is always subject to review pending a change of circumstances. Should appellant's actions in the future prove harmful to the children, she has had her day in court.
We now turn to the matter of maintenance and support for the children. Appellant testified that she earned $325.00 per month. Appellee was earning $146.00 per week which was soon to be raised to $158.00. However, the debts and obligations of the community, the needs of each parent and the ability of each to contribute to the support of the children as well as the needs of the children are not shown in the record to any extent that would justify an award of any sum at this time. Accordingly, we believe this matter should be pretermitted, reserving unto appellant the right to apply to the trial court for the issuance of a rule for the purpose of determining the amount she is entitled to receive as support for the children.
Accordingly, for the above and foregoing reasons the judgment of the district court granting Gerald Joseph Daigle, plaintiff in reconvention, a divorce is affirmed; the judgment awarding said plaintiff in reconvention the permanent care, custody and control of the children is reversed and set aside and judgment is rendered herein awarding the care, custody and control of the said children to Lucille DeLaune Daigle, defendant in reconvention; the costs incurred in the trial court and on appeal are to be borne equally by the parties.
Affirmed in part, reversed in part and rendered.
LANDRY, Judge (dissenting).
Although I agree with the majority conclusion granting defendant husband a divorce on the ground of adultery, I disagree with that part of the judgment reversing the custody award made in defendant's favor by the trial court.
Our law is well settled to the effect that whereas the mother has preferential right to custody, especially in those cases involving children of tender years, nevertheless she will be denied this right if the welfare and best interest of the children so decree. Morris v. Morris, La.App., 152 So.2d 291.
Equally well established is the rule that mere commission of adultery does not per se render a mother unfit to be custodian of her children. In this regard, the rule is that a mother is entitled to custody, notwithstanding the commission of adultery, unless her conduct, viewed in its entirety, establishes her moral unfitness to discharge the responsibility. Antony v. Antony, La.App., 160 So.2d 765; McCaa v. McCaa, La.App., 163 So.2d 434.
Moreover, it is the confirmed law of this state that in matters of custody attending separation or divorce, the trial court is vested with much discretion. An adjunct of this rule is that the exercise of his discretion by the trial court will not be disturbed upon review in the absence of a showing of a clear abuse thereof. Robertson v. Robertson, La.App., 215 So.2d 521.
The clear import of the myriad cases dealing with the subject matter is that if the conduct of the mother, viewed in its entirety, reflects a callous disregard for generally accepted moral principles, she will be deemed unfit to have custody of her children. See Salley v. Salley, 238 La. 691, 116 So.2d 296.
The majority herein apparently place considerable reliance on the fact that plaintiff has properly attended to the physical needs of the children following her departure *324 from the matrimonial domicile. The record does indeed so reflect. However, in my judgment, the moral fitness of the mother or father is not to be adjudged primarily upon the kind and degree of attention devoted by the parent to the bodily needs of the children. In my opinion, the welfare of the child (the primary concern of the court in such matters) depends equally, if not more so, upon the proper moral training and example emanating from the parent having custody. Unquestionably the ability of a child to attain a fruitful and wholesome future will depend in large measure upon his concepts of virtue, righteousness ad morality. Equally certain is the fact that the standards of propriety taught and practiced by the parent having custody will, to great extent, determine the eventual ethical and moral criteria adopted and pursued by the child.
That a parent will commit adultery while his or her children are present in the house or apartment where the immoral act is consummated is a serious reflection upon the moral principles of the person concerned. I find this to be true even though, as in the case at hand, the children are not aware of the occurrence of the act. Such conduct evidences a lack of moral fiber and portrays a character determined to selfishly pursue a course of action reprobated by society in general irrespective of the implications thereof.
As found by the majority, plaintiff herein dated the correspondent on several occasions prior to the granting of the divorce. All such instances were confined to day-light hours, but on two occasions out of town automobile trips were involved. Also, as found by the majority, plaintiff conceded having been publicly kissed by correspondent in the presence of the children. Considering the evidence in its entirety, I find no abuse of the discretion exercised herein by the trial court.
I respectfully dissent from the majority decision respecting custody of the children.