294 So.2d 261 (1974)
Wayne N. JORDAN
v.
Leslie Ruth JORDAN.
No. 9801.
Court of Appeal of Louisiana, First Circuit.
April 22, 1974.
Rehearing Denied May 28, 1974.
Writ Refused July 1, 1974.
*262 Walton J. Barnes, Baton Rouge, for appellant.
Ralph W. Brewer, Baton Rouge, for appellee.
Before LOTTINGER, BLANCHE, and de la HOUSSAYE, JJ.
de la HOUSSAYE, Judge.
This is a suit for divorce on the grounds of adultery and for custody of 7 and 9½ year old daughters born of the marriage. The District Court rendered judgment granting a divorce in favor of the plaintiff husband and awarded custody of the children to him. The defendant wife appealed only from that portion of the judgment awarding custody of the children to their father.
The general facts are that plaintiff and defendant were married in February, 1963, and within three years their relationship began to deteriorate. There were two separations and reconciliations prior to the last and final separation of May 28, 1971, when Mrs. Jordan left the matrimonial domicile with her children and moved into her parents' home in the country. On June 28, 1971, Mrs. Jordan admitted herself into Our Lady of the Lake Hospital for psychiatric care and was treated by Dr. A. Knight Lavender. The children were visiting their father when Mrs. Jordan went into the hospital and Mr. Jordan, upon learning of her hospitalization, refused to return the children to her. Mrs. Jordan remained at the hospital for twelve days *263 and, upon her discharge, she returned to her parents' home. She asked for the return of the children but did not press plaintiff in the belief that he would tire of them and because her psychiatrist advised her not to "rock the boat". During this period, she began to have relations with one Archie Bennett and at the trial on the merits, admitted to five acts of adultery with him. In October of 1971, she obtained employment at the Motor Vehicle Division of the Department of Public Safety and rapidly advanced to a supervisory position. On November 29, 1971, Mr. Jordan filed suit for divorce on the grounds of adultery and asked for custody of the children. The rule for custody was heard on January 6, 7, and 12, 1972, and Mr. Jordan was awarded the temporary custody of the children. On June 22, 1973, the trial on the merits was heard and plaintiff ultimately was granted permanent custody of the children.
Several well-established jurisprudential rules are applicable here. Under LSA-C.C. Art. 157, which provides for custody of children after divorce, the paramount consideration is the welfare and best interest of the child. Under this rule, custody of minor children, especially when they are of tender years, should be granted to the mother unless she is found to be morally unfit or physically or mentally incapable of taking care of them. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972); Kieffer v. Heriard, 221 La. 151, 58 So.2d 836 (1952); Salley v. Salley, 238 La. 691, 116 So.2d 296 (1959). Proof of one act of adultery, or even of several acts with the same paramour, does not necessarily render morally unfit a mother who is otherwise suited for custody. Fulco v. Fulco, supra; Daigle v. Daigle, 222 So.2d 318 (1st Cir., 1969); Poole v. Poole, 270 So.2d 215 (La.App. 1st Cir., 1973); writ denied, 273 So.2d 295 (La.). However, where the mother has recently lived in open and public adultery with her paramour for a substantial period of time, in total disregard of the moral principles of our society, the courts have generally held the mother is morally unfit for custody. See: Salley v. Salley, supra, Strother v. Strother, 248 So.2d 867 (La.App. 3rd Cir., 1971), and the cases cited therein.
This court is well aware of the jurisprudential admonition entitling the determination of the trial judge in child custody matters great weight, as he is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. Fulco v. Fulco, supra; Estes v. Estes, supra; Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969); Decker v. Landry, 227 La. 603, 80 So.2d 215 (La.App. 1st Cir., 1973), writ opinion that the learned judge committed reversible error in not awarding the children to appellant.
Appellee strongly maintains that Mrs. Jordan is morally unfit because of the adulterous relationship with Archie Bennett. As mentioned previously, it was admitted by appellant that she committed adultery with Bennett five times but these occasions occurred outside the presence of the children. It was testified by Mrs. Jordan that this affair lasted briefly and that she was no longer seeing Bennett, having terminated the relationship shortly after her stay in the hospital which was several months prior to the trial of the merits. She also stated that she was not dating anyone. It was also shown at the trial that the children didn't even know Archie Bennett. In light of the Fulco Case, the facts of this case do not warrant the courts' refusal to grant custody to appellant. In Fulco, the mother began "going out" with a married man subsequent to the parties' separation; that he frequented the home of the mother on several occasions, often staying until eleven or twelve at night and that on at least one occasion, he *264 stayed overnight. After the rule was filed by the husband to obtain custody of the children, the mother and the children had moved in with her parents and there was no evidence of immoral conduct thereafter. The court noted that the "... purpose of a custody determination is not to punish a parent for any past misconduct, it is rather to serve the best interests of the children of the marriage." Id., 254 So.2d at 606 (emphasis supplied by the court). In Daigle v. Daigle, 222 So.2d 318 (La. App. 1st Cir., 1969), the court allowed the adultress mother custody of the children because she did not have a "... pattern of behavior of such a nature and over a protracted period of time that her unfitness is a foregone conclusion." Id., at 322. Generally, the courts will not deny custody from the mother because of a few acts of indiscretion, Poole v. Poole, 270 So.2d 215 (1st Cir., 1972); Wilson v. Wilson, 218 So.2d 372 (La.App. 2nd Cir., 1969); but will only deny the custody to her when she lives in open concubinage with her paramour for a substantial period of time. Salley v. Salley, supra, Fulco v. Fulco, supra, Johnson v. Johnson, 268 So.2d 114, (La. App. 3rd Cir., 1971); Morris v. Morris, 152 So.2d 291 (La.App. 1st Cir., 1963); State v. Marusak, 205 So.2d 477 (La.App. 3rd Cir., 1967). In the case before this court, there is no evidence showing that Mrs. Jordan was living in open concubinage with anyone or that her behavior was of such a nature and of a duration that her unfitness would be a forgone conclusion.
Appellee urges that Mrs. Jordan is unfit due to her mental condition. Testimony of plaintiffs' witnesses stated that Mrs. Jordan was temperamental and she expressed several fits of anger. The husband testified that on one occasion he took a pistol from her purse after she threatened to kill him. Mrs. Jordan denied that she ever seriously made a threat or that she would carry one out. Her psychiatrist testified that she is quite normal and would not harm anyone. He also testified that she no longer needs any psychiatric treatment and that she is completely capable to care for the children. We think that her alleged unfitness was not shown at the trial and, in fact, the testimony of the only expert witness as to her mental condition confirms that she is not mentally unfit.
Appellee strongly urges that the "double-burden" rule should apply in this case because there was an adversary hearing that granted the temporary custody of the children to him and because the children have resided with him for the past two and one-half years. The double-burden rule was announced in Decker v. Landry, supra, when the court stated that:
".... it is encumbent upon the party requesting the modification to prove that the conditions under which the children are living are detrimental to their interests and further that the applicant... will provide a good home and better environment if given their custody." Id., 80 So.2d at p. 92.
In the case before this court, the adversary hearing determining custody appellee refers to was for temporary custody only and the appeal taken by appellant arises out of the same lawsuit. This court is of the opinion that it is not necessary for the wife to bear the double-burden of proof at the trial of the merits when an adverse decision is made of the temporary custody of the children during the pendency of the case. In Decker v. Landry, supra, which involved the mother seeking to gain custody of her children two years after permanent custody was awarded to the father, the court pointed out that:
"This is not a case wherein the parents of the children are initially contesting the right of one over the other.... Here, permanent custody has already been awarded to the father by the judgment of separation conformably with the provisions of Article 157 of the Civil Code." Id. at p. 92.
Mrs. Jordan visited the children regularly and often brought them to her parents *265 home in the country. She testified that she wished to avoid confrontation with Mr. Jordan over custody of the children in the hope that he would tire of them. She also testified that she was without a job until two months prior to the institution of these proceedings. In Estes v. Estes, supra, the mother, who was originally awarded the custody of the children, returned the children to their father due to her financial inability to care for them. In a joint petition, the mother and the father secured an order temporarily changing the custody of the father. Two years later, she sought the return of the children. In returning custody to the mother Justice Tate stated the following:
"The mother's temporary inability to care for them due to economic distress did not transform her into an unworthy parent, nor alter her custody as being in the ultimate best interest of the young children."
"It is true that stability in environment is an important value, so that a party seeking to change a considered determination of the permanent custody of children bears a heavy burden to justify such change as being in their best interest. Nevertheless, here, both parents and children realized at the time of the 1966 change of custody that it was temporary only." Id., 258 So.2d at pp. 859, 860.
It must have been realized by the parties that the judgment awarding temporary custody to Mr. Jordan was a temporary situation which was to be finally determined at the trial on the merits. In fact, defendant made extensive modifications of the judgment of the rule to insure the temporary nature of the order. See: Jordan v. Jordan, 277 So.2d 761 (La.App. 1st Cir., 1973). The children's ties with their mother remained warm and strong through her repeated visitations to and with them.
We note further that in its reasons for judgment the trial court simply concluded that the best interest of the children would be served by continuing their care, custody and control in their father. In so doing, it gave no factual basis for this conclusion. This Court therefore is unable to determine which facts it relied upon, or evaluated, in arriving at its decision. We are, therefore, unable to accord its findings that weight to which it might otherwise be entitled.
Accordingly, for the foregoing reasons, the judgment of the trial court granting the permanent care, custody and control of the minor children to plaintiff-appellee, Mr. Jordan is reversed. In all other aspects, the judgment of the trial court, particularly in granting the divorce in favor of Mr. Jordan is affirmed. The costs of this appeal are assessed against appellee.
Affirmed in part, reversed in part.