Shriver, Appellee, v. Shriver, Appellant.

[Cite as Shriver v. Shriver, 7 Ohio App. 2d 169.]

(No. 314—Decided August 17, 1966.)

*Messrs. Chester & Rose* and *Mr. Thomas M. Bolon,* for appellant.

*Mr. Robert O. Hamilton,* for appellee.

Guernsey, J. This is an appeal from an order of the Common Pleas Court of Union County entered pursuant to motions for modification of a divorce decree filed respectively by the plaintiff and by the defendant.

On June 30, 1962, the court entered its decree granting the defendant, Bonnie Shriver (Doyle), a divorce from plaintiff James Shriver. The decree noted that the parties had entered into a separation agreement with regard to custody and visitation of their minor child and other matters, found the agreement to be fair and equitable, and approved and made it a part of the decree. As to custody and visitation the agreement provided:

"The First Party (husband) hereby gives unto the Second Party (wife) the care and control of the minor child of the par-

ties hereto, reserving to himself the right of visitation with the minor child on alternate Saturdays and Sundays from 1:00 p. m. to 4:00 p. m., taking the child away from the home of Second Party."

On September 2, 1965, the plaintiff father filed a motion alleging a substantial change of circumstances and moving the Court "for an order finding that the plaintiff has fulfilled his obligations for child support to date; setting future child support payments at ten dollars ($10.00) per week to be paid through the clerk of this court; and granting right of visitation to the father, James Shriver, and the grandparents, Mr. and Mrs. William Shriver, with Charles Todd Shriver each week from 6:00 p. m. Friday to 6:00 p. m. Saturday."

On October 1, 1965, the defendant mother filed her motion "for an order determining the amount of child support arrearage herein and entering judgment for that amount" and "for an order terminating plaintiff's visitation rights with their minor daughter (sic)."

These motions were heard together and upon the evidence adduced the court made separate findings of fact and conclusions of law and ordered that "the minor child of the parties, be permitted to visit in the home of his paternal grandparents from 5:00 p. m. on the last Friday of the month until 5:00 p. m. the succeeding Sunday," denied "the request of the defendant to terminate plaintiff's visitation rights," awarded judgment to the defendant for the delinquent support payments in the sum of $2,703.41, and ordered support payments reduced to $10 plus poundage per week effective October 23, 1965.

This is the order from which the defendant has perfected her appeal to this court. She assigns error of the Common Pleas Court (1) in granting plaintiff's motion requesting visitation rights for the paternal grandparents, and (2) in denying defendant's motion to terminate plaintiff's visitation rights.

With respect to the first assignment of error the evidence adduced shows that the minor child had frequently visited the paternal grandparents except during a period of time when the paternal grandmother was undergoing and recovering from surgery, that the grandparents had affection for the child, provided it with new clothing to be used while at their home, had a pony and a swimming pool which could be used by the child,

had started a savings account (in their complete control) which they stated was to be used for the education of the child, and were making payments on an insurance policy on the life of and owned by the plaintiff father in which the child was named as a revocable beneficiary.

It also appears in evidence that the plaintiff father was at the time of the modification hearing incarcerated in the Allen County jail under charges, but not convicted, of unarmed robbery. Allusion was made in evidence to his hospitalization in a state hospital subsequent to the divorce, but neither the reason for such hospitalization nor the duration thereof appears in the record. Reference was made to an episode when he was arrested for impersonating an officer of the law, and the defendant mother, when testifying as to some money received from him, said that she received it "the night that he tried to commit suicide."

It appears further in the record that the defendant mother has no objection to the paternal grandparents having visitation with the child but she insists that any visitation they should have *should be under her control and not by virtue of judicial decree.*

The issue thus raised under this assignment is whether a divorce court may modify a visitation right given to a father by virtue of a separation agreement approved in a divorce decree, by adding to the father's visitation right a visitation right in the paternal grandparents when the mother of the minor child, having custody of the child, does not consent to such modification and vigorously objects thereto.

We have found no cases in Ohio which tend to treat this specific issue except the case of *Kay* v. *Kay*, 65 Ohio Law Abs. 472, in which the court determined that visitation rights might be awarded to grandparents. This determination, however, is *obiter dictum* for the grandparents were, in that case, denied visitation rights.

In the case of *Baker* v. *Baker*, 85 Ohio App. 470, motion to certify overruled by the Supreme Court in case number 31830, June 22, 1949, it was determined that in a proceeding to change the custody of a minor child, *who has been living with a paternal grandparent,* to its mother, the criterion is the best interest of the child, and a judgment awarding custody to the mother

and "partial custody" to the grandmother is not contrary to law. In the *Baker case* custody had originally been awarded to the father, and the child had been raised in the home of the grandmother from the time it was six months old to the time of hearing, some six years later. The father had also died and the court's order of modification, after giving custody to the mother, provided that the paternal grandmother may have the child every other weekend during the school year, for one week during the Christmas or the spring vacation, and for one month during the summer. The rights thus given to the grandmother were similar to those given to the paternal grandparents in this case and were essentially visitation rights rather than custody rights.

In the case of *Grandon* v. *Grandon,* 164 Ohio St. 234, the Supreme Court having allowed a motion to certify "because of the apparent conflict in decisions of Courts of Appeals on the legal question involved," including the decision in the *Baker case,* held that by reason of Section 3109.04, Revised Code, the Common Pleas Court has no authority to give the legal custody of a minor child to its grandmother *"where the child has not been abandoned by the mother and such court does not find that the mother is not 'a suitable person to have custody' of such child."* (Emphasis added.) It would appear from the *Grandon case* that the rule of law set forth in the *Baker case* was overruled by implication, but if not thereby overruled said rule purports to extend only to a situation where the minor child has been *living* with the grandparent.

The only statutory reference to visitation rights is that contained in Section 3109.05, Revised Code, providing for the making of "any just and reasonable order or decree permitting the parent who is deprived of the care, custody, and control of the children to visit them at such time and under such conditions as the court may direct." There is no statutory provision for the granting of visitation rights to any person other than the parent deprived of custody, although under the general equitable powers of the Common Pleas Court, it has often been recognized that such extra-parental visitation rights might be decreed in the approval of rights set forth in a separation agreement between the parties. It will be noted, however, that the

separation agreement herein approved did not provide for extra-parental visitation rights.

In the case of *Selby* v. *Selby*, 69 Ohio Law Abs. 257, it was said in Judge Hunsicker's opinion:

" 'Custody' includes within its meaning every element of provision for the physical, moral and mental well-being of the children. It implies that the person having custody has the immediate personal care and control of the children."

" * * *.

"The trial court, under the statute, has the power to award the care, custody and control of the minor children of the parties to either parent, *but the statute does not provide for limited or restricted powers of custody.*" (Emphasis added.)

In the case of *Hackett* v. *Hackett*, 78 Ohio Law Abs. 485, it was recognized that a parent having custody of a minor child could determine its religious education contrary to the desires of the other parent.

Visitation rights are limitations or restrictions upon custody and the only provision for such limitation is that contained in Section 3109.05 with respect only to the *parent* deprived of custody.

It would seem, and we hold, on the authority of the statutes and the last three cited cases, that the mother, having been granted the custody of the minor child of the parties, which includes the control of such child, has the right to determine when such minor child may visit, or may be visited by, the paternal grandparents of the child, and that a court exceeds its authority in decreeing visitation rights to such grandparents where such rights have not been agreed to by the mother, where the child has not been abandoned by the mother, and where the child has not been living with the paternal grandparents. If this were not so extra-parental visitation rights would be sought in almost every divorce case and it is unlikely that the rights sought would be confined solely to grandparents.

It should be noted, in passing, that the visitation rights here granted by the lower court, being in addition to visitation rights already given to the father, and preserved to the father, would, if enforced, deprive the mother of the company of her minor child during some part of every weekend of the year. It

will be noted further, in passing, that the motion of the father for a change in visitation rights did not, in its literal terms, request visitation rights for the grandparents in addition to or different from those to which he would be entitled, that his rights would be shared with them.

Finally, in passing, we observe that the visitation of grandparents with a minor grandchild is normally assured by the parent deprived of custody during the period of visitation decreed to him. Although the law does not permit a court to decree visitation rights to a grandparent when the parent is not able to exercise his rights, our inability to do so does not mean that we either condone or approve of the parent having control of visitation terminating the relationship which had normally existed between the grandparents and grandchild.

As the evidence as to the father's conduct since the divorce, in its relation to the welfare of the child while in his company, was inconclusive, and not sufficient to show that the trial court abused its discretion in refusing to terminate the father's visitation rights, we hold the second assignment of error without merit.

The court having committed error prejudicial to the defendant-appellant in that part of its order granting the visitation rights to the paternal grandparents, that part of the order is reversed and vacated, and the cause is remanded to the Court of Common Pleas with instructions to overrule that part of the plaintiff-father's motion for modification as relates to visitation rights.

*Judgment reversed in part.*

MIDDLETON, J., concurs.

YOUNGER, P. J., dissenting. I must dissent from the majority opinion as I am convinced that it does not get to the real issue involved. It is based upon the fact that since the grandparents, as such, have no legal right to visitations with the child, the court below had no authority to grant same. This is a *non sequitur*.

It is admitted that grandparents have no legal right to demand that a divorce court grant them visitation rights with a

grandchild. It is also admitted that grandparents are not entitled to custody in the absence of a finding that both parents "are not suitable persons to have custody." However "visitation rights" and "custody" are not to be confused. They are entirely different and are governed by entirely different rules of law. Likewise the right of visitation, to which a parent who is deprived of custody is entitled, by statute, is not to be mistaken for or confused with the privilege of visitation, which the Common Pleas Court, in a proper case, in the exercise of its equity powers and judicial discretion, grants, as being for the welfare and to the best interests of a child. It is the failure of the majority opinion to distinguish between visitation rights and custody, to distinguish between the right to visitation and the privilege of visitation, and consider the equity powers and judicial discretion vested in the Common Pleas Court, that gives rise to this dissent.

The majority opinion (page 169) bases its holding on the authority of the statute (Section 3109.05) and the three cited cases (*Hackett, Selby,* and *Grandon*). The statute involved, granting visitation rights to a parent deprived of custody, in no way attempts to limit or deny other visitation rights and the three cases (as well as the *Baker case*) all are change of custody cases which do not involve visitation rights. To forbid visitation rights or to deny the Common Pleas Court the right to grant the privilege of visitation on the theory that such would be contrary to or a diminution of custody is to split a hair.

In the case of *Kay* v. *Kay,* 65 Ohio Law Abs. 472, Judge Lybarger of the Common Pleas Court of Cuyahoga County was confronted with a similar motion filed by a divorced father, who had moved to California, asking that reasonable visitation rights be granted to his parents, the paternal grandparents of the child, who lived in Lakewood, the mother of the child having remarried and was living in Avon Lake in Lorain County. Judge Lybarger was thus confronted by two questions: First, a legal question. Did he have authority to grant such a motion? and, if so: Second, a factual question. Would it be proper to do so under the facts and circumstances presented? He answered the first question as follows:

"There can be no doubt that a court may, when propriety

or necessity dictate, grant the privilege of visitation to grand-parents, just as it may grant custody to a grandparent or some outsider if neither of the child's parents is a suitable person for such purpose. However, the granting of a right of visitation to others than a parent should be done only after a showing that the welfare of the child either demands it or will not be adversely affected by it."

He answered the second question by reviewing the testimony offered, and stated:

"All things considered, the court is convinced that it would not be to the best interests of the child to order that the grandparents have the *right* of visitation."

I would approve and adopt the legal conclusion arrived at in this decision, and, in my opinion, it is not obiter dictum, as the legal question involved had to be decided. The result of the case, being against the grandparents, was based entirely upon the facts and circumstances introduced in evidence.

In the case before us the Common Pleas Court had the advantage of hearing and seeing from the witness chair, the mother, the stepfather, who had married the mother only three weeks before the hearing, and both grandparents. The Court made a separate finding of facts, which it is necessary to consider, as the facts are all-important in a case of this nature.

The court found that the father of the child "James Shriver is now in jail and has not exercised his visitation rights since January, 1965." The hearing was on October 16, 1965. The evidence discloses that the father had been in jail at Lima for about four months awaiting trial upon two charges of unarmed robbery. His chances of being around for visitation rights in the near future were, therefore, extremely slim.

The court further found "that said child has been in frequent contact with his grandparents, seeing them approximately every two weeks or oftener from the time of the divorce until August, 1965." The divorce was granted June 30, 1962, so the close and intimate relationship between the child and the grandparents had been in effect for over three years. The evidence discloses that the mother worked on Saturdays in a Beauty Shop with her mother and had encouraged and readily consented to such visitations as it relieved her of hiring a baby-sitter, and gave her an opportunity to have dates.

The court found further that "the visits with the grandparents would ordinarily be from Friday night to Saturday night and sometimes to Sunday morning. The grandparents keep a pony for the child, have bought clothes for him, maintain an insurance policy on James Shriver's life with the child as beneficiary in the sum of $5000, and have established a college fund for the child." The evidence shows that the grandparents have paid the premiums on the life insurance for their son since it was taken out years ago and that the child is the present beneficiary and that the college fund is a separate bank account in the name of the grandfather and in which $500 has been deposited annually for the past three years. The majority opinion makes light of this because the beneficiary could be changed or the savings account closed out. The evidence discloses that this child is the only grandchild these grandparents have and I would credit them with having love and affection in their hearts and not question their motives. This arrangement did not spring up overnight but has been planned over the years

The court finally concluded "The court finds that there has been a close and normal relationship with the paternal grandparents and that it would be for the best interest of the child for the grandparents to have rights of visitation. The paternal grandparents occupy an important place in the life of this child and a severing of this relationship could well be upsetting and detrimental to the welfare of the child. The court is of the opinion that in the absence of a specific order for visitation with the paternal grandparents, the contact would be severed. This opinion is based upon the testimony of Robert Doyle who indicated strong objection to granting visitation rights to the paternal grandparents, as contrasted with the statements of Bonnie Shriver to the Court."

The evidence discloses that after a period of only three weeks the new stepfather was attempting to "rule the roost" and had developed hostility toward the grandparents as demonstrated by his brash and smart-alec answer of "Too long" when asked how long he had known the grandparents.

Thus the trial court was forced to the conclusion that if the close association and affection developed over a period of more than three years and which it had found should be continued

;for the welfare and the best interest of the child, was to continue at all it would have to be by court order rather than by an innocuous warning that if voluntary visitations were not continued in the future it might affect future considerations of the matter.

In my opinion under the law the Common Pleas Court in the exercise of its equity powers and judicial discretion had the authority to grant the privilege of visitation to the grandparents and, under the facts and circumstances present, arrived at a wise and sensible conclusion and the judgment appealed from should be affirmed.