270 So.2d 215 (1972)
W. Wallace POOLE, Jr., Plaintiff-Appellant,
v.
Stephanie Ann Arculeer POOLE, Defendant-Appellee.
No. 9021.
Court of Appeal of Louisiana, First Circuit.
November 13, 1972.
Rehearing Denied December 26, 1972.
Writ Refused March 1, 1973.
*216 Clint L. Pierson, Jr., and Julian J. Rodrigue, Covington, for plaintiff-appellant.
Louis B. Porterie, Duke & Porterie, New Orleans, for defendant-appellee.
Before SARTAIN, BLANCHE and EVERETT, JJ.
EVERETT, Judge.
In 1965 W. Wallace Poole, Jr. obtained a divorce from Stephanie Ann Arculeer Poole on the grounds of adultery and the custody of two female children born of that marriage, Enid, now age 13½ years, and Erin, now age 12 years, was awarded to the father. Visitation rights were granted unto the mother. In 1968 a rule was perfected by the wife against the husband for a change of the visitation rights and she was successful in obtaining a change to permit visitation during the entire month of July, six days during the Christmas holidays, and one weekend a month in all months other than July and December.
On July 20, 1971 the mother brought the instant rule against the father in an attempt to obtain the care, custody and control of these two children. It is alleged by the plaintiff in rule that there has been a change in circumstances of the mother and that in 1967 she became legally married to a Mr. Howard Cromwell Stanley and lives with him in a suitable environment in St. Louis, Missouri and, further, that there has been a change in circumstances of the father because he is mistreating the children physically and is rearing these children of tender age in a fashion that is detrimental to their welfare.
The trial judge refused to change the custody, as requested by the mother, but did impose a change of the visitation privileges. He allowed the mother to visit with the children commencing December 27 at 4:00 P.M. and ending January 2 at 4:00 P.M. each year and for the Easter vacation of each year commencing at 4:00 P.M. on the day they are dismissed from school and ending at 4:00 P.M. on the day before school recommences. In addition, visitation was granted commencing at 4:00 P.M. one week after the summer vacation begins and to remain until 4:00 P.M. of the day two weeks before they are to recommence school from the summer vacation. Also from 4:00 P.M. on the day they are released from school for the Veterans Day weekend, occurring in October, until 4:00 P.M. the day before they are to recommence school after that weekend.
Both parties have appealed the ruling of the District Court.

I.
It is argued by the plaintiff in rule that she has remarried and become a fit mother and is entitled to the custody of these two minor children who have been living with their father since 1965. There seems to be no real dispute that Mrs. Stanley is now a fit person to take care of the children, but that does not of itself under these circumstances give her the right to the custody of these children. They have no doubt learned to know and love their father, as well as their stepmother since their father has remarried. It is their welfare that this court is primarily concerned with. In Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972), the Supreme Court of the State of Louisiana stated:
"* * * In Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), we summarized the applicable legal principles as follows: (extensive citation of authorities omitted):
"(1) The paramount consideration in determining to whom custody should be *217 granted is always the welfare of the children. * * *
'(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father. * * *
`(3) When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed. * * *'"
The trial judge felt that the mother was unfit when the divorce was granted and awarded the custody to the father. On one previous occasion the mother sought to gain custody from the father, as she is doing now, but her pleas were rejected.
We fail to see that the plaintiff in rule has fulfilled the burden of proving her allegation that there has been a change in circumstances. We do not feel that she has proved that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed.
It is alleged by plaintiff in rule that the father is mistreating the children physically. Particularly, she refers to what she calls a "beating" of Erin on or about March 20, 1971, resulting in serious bruises on the buttocks of the child. The evidence reflects that the father did administer some physical punishment to the child by striking her with a belt across her buttocks and it did leave discernible marks. A photograph was placed into evidence to show the condition of the child. This evidence does not impress this court as a "beating" but more of a spanking and such a spanking happened on only one occasion. The trial judge did not believe that this was sufficient cause to remove custody from the father and we believe he was correct.
Following this episode, the children were seen by Dr. C. A. Cowardin on April 17 and May 22, 1971. He interviewed the children and viewed psychological reports submitted by the mother. Based on this, it was his opinion that the children should be with their mother the major portion of the year.
On the other hand, Dr. Oliver Sanders, Jr. made a psychiatric evaluation of both of the children and found Enid to be, "Normal pre-adolescent girl". His impression of Erin was, "Normal latency age child. I see no evidence of psychopathology of any significant degree in this patient."
The opinion of these doctors are of no real assistance to this court, one way or another.
The trial judge in his oral reasons for judgment stated:
"Custody will not again be changed by a Court unless and until it can be shown that there has been a so called dual change of conditions, a change of conditions to the better on the part of the party who lost custody of the child, a change of conditions to the worse on the part of the party who has custody of the child."
In Carmichael v. Carmichael, 265 So.2d 668 (1972), Judge Savoy of the Third Circuit Court of Appeal stated:
"In Fulco v. Fulco, 259 La. 1122, 254 So.2d 603, our Supreme Court enunciated the rule requiring that great weight be given to the trial court's decision in *218 matters of child custody. In that case the court stated:
"Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof.'"
We do not feel that the portion of the judgment of the district judge whereby he declined to change custody should be disturbed.

II.
W. Wallace Poole, Jr. has appealed that portion of the trial court's judgment changing the visitation privileges of the mother. He contends that in the first place, visitation privilege was not at issue and secondly, the extent to which privileges were granted results in divided custody. We think this position is well taken.
If the visitation privileges were to remain as allowed by the trial judge it would amount to the mother enjoying visitation privileges with her two children for a total of eighty-three days each year. She would have them with her for approximately seventy days during the summer vacation, seven days during the Christmas holidays, three days in October and three days at Easter. Surely, this must be considered as divided custody. This, of course, is frowned upon by the courts. As observed by this court in Ogden v. Ogden, 220 So.2d 241 (1969), the visitation privileges as changed by the trial court would, in effect, result in the children having two homes, a circumstance which can only confuse them and lead to an undesirable division of parental authority which is to be avoided in their own best interests. Even more so in the instant case, as distinguished somewhat from the Ogden case, is the distance that the children would be removed from their permanent home. It must be remembered that the mother lives in St. Louis, Missouri and the father lives in Covington, Louisiana. In the Ogden case both parents lived in the same city.
In resolving issues of this nature much discretion is accorded the trial judge. Johnson v. Johnson, 214 La. 912, 39 So.2d 340 (1949). Despite the great weight that should be accorded the judgment of the trial court, it is our conclusion that it was in error in changing the visitation privileges that had existed several years with no apparent ill effects upon the children. Accordingly, this portion of the judgment of the district court is reversed and the prior visitation privileges reinstated.
Costs of this appeal to be borne by defendant-appellee.
Affirmed in part. Reversed in part.