**Harvey KUDLER and Marcia Kudler,
Petitioners-Appellants,**

v.

**Mallory Ira SMITH,
Respondent-Appellee,**

**and regarding**

**Brian Alexander Smith and Vanessa
Lauren Smith, Children.**

**No. 80CA1216.**

Colorado Court of Appeals,
Div. II.

Oct. 29, 1981.

Rehearing Denied Dec. 31, 1981.

Certiorari Denied March 29, 1982.

Harvey Kudler, pro se.

Maynard & Miller, Glen B. Maynard, Golden, for respondent-appellee.

KELLY, Judge.

Marcia and Harvey Kudler of New York petitioned for enforcement and modification of a New York Supreme Court order granting them the right to visit their grandchildren, Brian and Vanessa Smith, who live in Colorado with their father, respondent Mallory Smith. The Kudlers appeal the Colorado trial court's determination under § 19–1–116(4), C.R.S.1973 (1980 Cum.Supp.) that the best interests of the children require denial of any visitation rights for the grandparents. We affirm.

The Kudlers' daughter, Judy, married Mallory Smith in 1968, and the couple had two children, Brian in 1969 and Vanessa in 1972. The Smiths separated in 1974, and the children went to live with the Kudlers because Judy was emotionally unstable and Mallory was working and attending school full time. Judy committed suicide in 1976, and in 1977, Mallory married Mary Lovell. In 1978, Mallory Smith regained legal custody of his children, and in 1979, the Smiths moved from New York to Colorado.

The Kudlers have been suing Mallory Smith in one action or another since the day after his marriage to Judy. When Judy and Mallory separated and allowed the Kudlers to keep the children, the grandparents

sued for custody and successfully limited the parents' visiting privileges. When Mallory won custody of his children in 1978, the Kudlers resisted their return until February 1979 by further legal action and by removal of the children from the New York court's jurisdiction.

Mallory obtained the permission of the New York court to take the children on a six-week vacation in Colorado, and when they failed to return, the Kudlers brought a habeas corpus action in New York which resulted in a bench warrant for Mallory's arrest. The Kudlers have also sued several times in federal court alleging violations of the grandchildren's asserted constitutional right to visit their grandparents. When the Kudlers located the Smiths in Colorado, they petitioned for enforcement and modification of the New York order granting them visitation rights every other Sunday.

The trial court denied visitation rights after hearing testimony of extreme dissension between the Kudlers and Mallory Smith. Mallory testified that, when he regained custody of his children, Brian had frequent temper tantrums and Vanessa had been told that "females are not supposed to be intellectual," but to be "dumb and pretty, . . . take care of the house and raise kids." He maintained that the Kudlers interrogated the children during their visits to compile incriminating evidence against Mallory. He further asserted that, by frequently criticizing Mallory, the Kudlers undermined his authority in the Smith household and interfered with the Smiths' family harmony by revealing their disapproval of the marriage of Mallory, a Jew, to Mary, a Roman Catholic.

Because of the constant litigation, the children have been subjected to psychiatric examinations and have been taken from school by the police to appear in court. Mallory testified that the children showed signs of stress and strain after returning from visits with the Kudlers, and that old behavior problems would recur. The children became very upset when the Kudlers sent them a calendar marked with Judy's birth and death dates and the caption, "your mother is watching over you."

The trial court found that Mallory and Mary had established a good home for the children, who are doing well in school and leading healthy, normal lives. After reviewing evidence of the adverse effect of the Kudlers on their grandchildren, the trial court denied all visitation rights under § 19–1–116(4), C.R.S.1973 (1980 Cum. Supp.).

Enacted in 1980, § 19–1–116 enables a grandparent to seek a court order granting visitation rights when there has been a child custody case. The court may order visitation rights "only upon a finding that the visitation is in the best interests of the child." Section 19–1–116(2), C.R.S.1973 (1980 Cum.Supp.). The court may also modify or terminate the grandparents' visitation rights "whenever such order would serve the best interests of the child." Section 19–1–116(4), C.R.S.1973 (1980 Cum. Supp.).

The Kudlers originally petitioned in the district court for enforcement and modification of the New York Supreme Court order granting them visitation every other Sunday. Then they moved to amend the petition to obtain visitation rights under § 19–1–116, and the trial court granted the motion to amend.

■ On appeal, the Kudlers contend that the trial court had jurisdiction to enforce their New York visitation order but was not empowered to terminate visitation rights. However, § 19–1–116(4) specifically provides for termination of visitation rights, and since the Kudlers invoked the protection of that section, they cannot now change their theory and complain that the court had no jurisdiction under it. *See Wickland v. Snyder*, 39 Colo.App. 403, 565 P.2d 976 (1977).

■ Moreover, the trial court had the authority to modify the New York visitation order under the Uniform Child Custody Jurisdiction Act, § 14–13–101, et seq., C.R.S.1973 (UCCJA). Jurisdiction under the UCCJA is governed by § 14–13–104, C.R.S. 1973, which provides in relevant part:

"A court of this state . . . has jurisdiction to make a child custody determination by initial or modification decree if: (a) this state is the home state of the child at the time of commencement of the proceedings . . . or (b) it is in the best interests of the child that a court of this state assume jurisdiction because the child and his parents . . . have a significant connection with this state and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationship." Section 14–13–104(1).

Colorado has been the home state of the children since 1979, and substantial evidence concerning the children's future is available here, and not in New York. Modification of a New York custody decree by a Colorado court is permitted when New York no longer has the UCCJA jurisdictional prerequisites. Section 14–13–115(1), C.R.S.1973.

The Kudlers rely on *In re Custody of Zumbrun*, 42 Colo.App. 37, 592 P.2d 16 (1979), in which the trial court was held to have lacked jurisdiction to modify a New Mexico custody decree under § 14–13–115, C.R.S.1973. However, New Mexico was the "home state" of the children in that case, not Colorado, as in the instant case. When Colorado is the home state, Colorado has the jurisdiction to modify a sister state's decree in the best interests of the children.

The Kudlers further allege that there was no competent evidence that denial of grandparents' visitation rights would be in the best interests of the children. On the contrary, the testimony of Mallory Smith concerning the adverse effect of the children's prior visits with the Kudlers provided ample basis for the trial court's conclusion that the negative attitudes of the grandparents were injurious to the children. In addition, Harvey Kudler testified he felt the children should live with the Kudlers, and Marcia Kudler admitted having removed the children from the New York court's jurisdiction to prevent their return to Mallory Smith. With no guarantee that the grandparents would respect the father's

wishes or even return the children, the trial court properly determined that denial of visitation was in the best interests of the children.

The judgment is affirmed.

ENOCH, C. J., and VAN CISE, J., concur.