**Susan NATION, n/k/a Susan Chabak, Appellant (Plaintiff),**

v.

**David NATION, Appellee (Defendant).**

No. 85–173.

Supreme Court of Wyoming.

March 5, 1986.

Richard H. Peek, Casper, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

By this appeal we review Rule 56(c), W.R.C.P., as relating to the date of filing responsive affidavits to resist a motion for summary judgment in a child custody and visitation controversy arising subsequent to entry of the original divorce decree. The trial court held that affidavits not *filed* on the day prior to hearing would not be considered by the court even though earlier *served.* Additionally involved is newly claimed grandparent visitation rights granted by summary judgment upon petition in the divorce proceeding without evidentiary hearing. We reverse.

The parties to this litigation, David Nation and Susan Nation Chabak, were divorced upon default status in 1979, by waiver of service by David Nation, and then, in contemporary terms, after divorced, the parties really started to fight, the father's visitation with the two children, boys aged ten and one half and twelve, being a primary issue.

The course of the litigation has proceeded through a petition to terminate parental rights as a separate action, filed by Susan Chabak on December 4, 1981, resulting in denial by the trial court and affirmance by this court in March, 1983, *Matter of Parental Rights of SCN and NAN*, Wyo., 659 P.2d 568, motion for order to show cause by David Nation, filed March 28, 1983, and now this third post-divorce proceeding.

This new activity was initiated by petition filed in the divorce docket on March 21, 1985. Petitioners named in that pleading are David Nation, the father, and Marilyn Nation and Doyle Nation, as paternal grandparents, who, by the verified petition, seek to establish grandparent visitation rights. No motion by the grandparents to intervene in the divorce case was made or considered by the court. An answer was filed on April 15 and included a cross peti-

Robert T. Moxley, Wheatland, for appellant.

tion, to which a response was seasonably filed on April 19, 1985.[1]

In accord with the apparent practice in Natrona County, petitioners submitted a request for setting for a motion for summary judgment to the district court, dated April 16, 1985, and filed April 18, 1985, with a *notice* of setting then entered on April 18, 1985 to schedule the case for that hearing on May 30, 1985, or 42 days later.

To complete the pleading scenario, Susan Chabak served interrogatories April 29. If ever answered, the answers are not presently part of the record.

The *motion* for summary judgment was then filed by petitioners on May 16, or 28 days after the entry of the setting order. Affidavits in detail were attached as signed and dated April 22 and 23, or about 23 days before the motion and affidavits were actually filed.

Since the 16th of May was on a Thursday, it would reasonably be expected that counsel for Susan Chabak would receive the motion and affidavits on Monday, May 20, or exactly ten days before the earlier scheduled hearing date. This was apparently what happened. Susan Chabak, by her attorney, filed on May 24 a traverse dated May 23, which, with affidavits then unsigned, were mailed to petitioners' counsel, and included affidavits of the children relating to the visitation questions. Receipt of the unsigned affidavits by counsel is not in dispute. Additionally, Susan Chabak certified under oath by separate affidavit that she had mailed executed copies of the affidavits of herself, her two children and the notary public, Lester Hadrick, to counsel for petitioner on May 24, 1985. A traverse to the statement of serving is not included in the record, and the subject is not directly addressed by brief of appellee.[2]

Counsel for Susan Chabak, officing in Wheatland (located about 100 miles from Casper, where the hearing was held), in concern about mail service, carried the original affidavits to court with him for the scheduled hearing for personal presentation to the trial judge at the hearing.

The court refused, as then offered, to consider the affidavits on the basis that they had not been filed on the prior day, denied a motion for a continuance to file affidavits, and proceeded to determine the case on the resulting uncontroverted affidavits of petitioners. The tendered responsive affidavits were file-stamped by the clerk's office on the next day, since the court had the file for hearing purposes on May 30.[3]

---

1. By their pleading designated as a petition, the grandparents asked:
 (a) summer visitation in conjunction with the father for the entire summer when the boys were out of school, to be exercised in Oklahoma;
 (b) one week alternate Christmas visitation in Oklahoma in addition to the one week afforded the father;
 (c) mother be required to furnish street address and phone number and *allow* contact on a regular basis with the grandchildren.
 The father separately asked that child support be abated during the summer.
 By cross petition the mother asked for modification, by suspension, of the father's existing visitation order, on the basis of the father's character and care.
 In the order as entered, the court denied the father's motion for an order to show cause (which motion does not appear of record); denied the father's petition to increase his visitation, which was not separately claimed; denied the cross petition of the mother; and stated:

 " * * * That the Court does not find a material question of fact, and that the Court should enter judgment as a matter of law,"
 and then ordered one month visitation right each summer for the grandparents, in addition to the four-week visitation provided for the father "in the locality of the grandparents' residence," which was Oklahoma.

2. It is not suggested that mailing of the unsigned affidavit alone provides the service requirement of Rule 56. It is only evidence of attempted diligence. However, service by a client as occurred in this case may not be preferable but is not excluded by Rule 5, W.R.C.P., and particularly under exigent circumstances.

3. Although perhaps not determinative in the normal case, it would be favored trial procedure in a case where pleading documents would be handed to the court at a hearing, for clarity and record purposes, to have the clerk's office file-stamp in advance of presentation.

The custody-visitation[4] order then was entered to generally change the prior amended order by granting 30 days summer visitation to the grandparents in Oklahoma, in addition to the four weeks July visitation also in Oklahoma, earlier provided to the father by the first amendment to the decree. The trial court denied the cross-petition relief requested by the mother, and also the original prayer in behalf of the father which might have been construed to be a request for additional visitation, since it asked for a joint, all-summer visitation for the father and grandparents.

A casual examination of all affidavits reveals antipathy, hostility and anger, as well as concern for the welfare of the children sufficient to clearly raise issues of fact. If the responsive affidavits are considered, there is no question but that summary judgment should not have been granted. See the excellent review and analysis of summary judgment by Justice Brown in *Colorado National Bank v. Miles,* Wyo., 711 P.2d 390 (1985). *Garner v. Hickman,* Wyo., 709 P.2d 407 (1985). See also an extended and detailed analysis, Schwarzer, *Summary Judgment under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465.

### Issues Involved

The issues raised in the brief by Susan Chabak include the service versus filing of responsive affidavits under Rule 56(c), W.R.C.P., and a substantive issue as to the propriety of the entry of summary judgment in this case. David Nation views the case in the context that the affidavits were not properly filed in order to be considered by the court and in absence thereof no factual issue existed militating against entry of the summary judgment to award grandparent visitation in Oklahoma of one month each summer.

We view those issues raised at this stage to be definable as the following:

(1) Propriety of the trial court's rejection of affidavits that had been served but not filed on the day prior to the hearing under the purview of Rule 56(c).

(2) Propriety of the entry of the order by summary judgment for grandparental visitation in the context of the record and evidence, and the sufficiency of the order itself as compliance with the grandparent visitation statute, § 20-2-113, W.S.1977, 1985 Cum.Supp.

(3) Jurisdictional status of the present proceeding in utilization of the divorce action file to issue the grandparent visitation order.

The initial issue requires this court to determine whether the affidavits prepared in support of the position of the mother should have been considered to be properly before the trial court and, if considered, then sufficient to raise issues of fact requiring trial disposition rather than the default-status summary judgment.

■ Before addressing that dispositive issue, another disturbing question is to be seen in the record before us. The litigative justification for a pre-assigned. hearing date and then filing the motion for summary judgment on the very last pre-ten-day notice time is not discernable. It has been said many times that procedure under the present rules should not be trial by ambush. *Whitaker v. Coleman,* 115 F.2d 305 (5th Cir.1940). Suffice it to suggest that if in reality the ten-day notice time is unfairly used, then the discretional capacity of the trial court either under Rule 56 or the general law of continuances, is severely confined. If this practice is to be followed in general, then this court may be faced with rule amendment as preferable to individual case review by appeal. We invite

4. There comes a time when a "visitation" order produces a partial custody result. Two months of each summer is hardly just visitation. *Shriver v. Shriver,* 7 Ohio App.2d 169, 219 N.E.2d 300 (1966); *Application of Grover,* Okla., 681 P.2d 81 (1984); *Commonwealth ex rel. McDonald v. Smith,* 170 Pa.Super. 254, 35 A.2d 686 (1952). See comments and footnotes 90 A.L. R.3d 222, 231.

attention to Art. 5, § 2 of the Wyoming Constitution and § 5–2–118, W.S.1977.[5]

In any event, this court would observe that, whenever this type of practice is utilized, the trial court should liberally vacate the setting upon motion of the opposing party to permit that party to meet the facts presented in the affidavits, and especially so in a major case or where both counsel and his client are out of town or out of state resulting in difficulty in communicating, preparing and serving responses.

## I

### *Filing Versus Service of Responsive Affidavits Under Rule 56(c)*

Rule 56(c), W.R.C.P. (identical to the federal rule), provides:

"The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. * * * "

The traverse by the mother to the motion for summary judgment stated:

"1. THAT as more fully set forth in the affidavits filed by the Plaintiff Susan Chabak in opposition to the Defendant's Motion for Summary Judgment, there ex-

ist material issues of fact as to all matters affecting the propriety of the Court granting the relief requested in the Defendant's Motion for Grandparent's Visitation Rights.

"2. THAT the Summary Judgment procedure is not intended to be a substitute for trial, and inter alia, the Defendant's motion would require that the Court find, after an adversary proceeding, that visitation, as requested in the said motion, is in the best interests of the parties' minor children.

"3. THAT the Defendant's deadline for responding to discovery motions made by the Plaintiff is within two or three days of the schedule motion hearing on the Defendant's Summary Judgment Motion, and counsel would not be satisfied that this discovery would be complete as of the 30th day of May, 1985."

The trial-process problem had been appropriately raised by the mother, and now matures to the question before this court as to the relationship between the word "served" as used in the rule and the "filed" requirement determined by the trial court. This is a subject not resolved by the Uniform Rules for the District Courts of the State of Wyoming.[6]

---

5. The litigant's responsive alternative of the unavailability affidavit of Rule 56(f), W.R.C.P., is probably mandatory upon a court, if adequately submitted in form and substance. See discussion, 10 Wright & Miller, Federal Practice and Procedure: Civil § 2740, p.722. See also discussion as to timing evidencing a split of authority, 10 Wright & Miller, Federal Practice and Procedure: Civil § 2719, p.453:

"* * * [T]here is some question whether an affidavit by the nonmoving party under Rule 56(f) stating why he is unable to present affidavits justifying his opposition to the summary judgment motion also must be served prior to the day of the hearing."

See also 6 Moore's Federal Practice ¶ 56.14, p.56–359; Kaplan, *Amendments of the Federal Rules of Civil Procedure, 1961–1963 (II)*, 77 Harvard L.Rev. 801, 827 (1964).

"* * * Summary judgment procedure is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial, it is to carefully test this out, in

advance of trial by inquiring and determining whether such evidence exists. Rule 56 is carefully drawn to effectuate this purpose. Subdivisions (a) and (b) provide for the institution of the procedure. Subdivisions (c) and (d) provide, the one for complete, the other for partial determination of the existence of genuine issues as to material facts. Subdivision (e) provides for affidavit and other forms of proof while Subdivision (f), making it further clear that the judgment is to be rendered only where it clearly appears that there is no issue, provides for the granting of a continuance to obtain proofs which appear to be existent but not then available." *Whitaker v. Coleman*, supra, 115 F.2d at 307.

6. Rule 301, Uniform Rules for the District Courts of the State of Wyoming reads:

"Each motion filed, except motions for summary judgment, shall set out the specific point or points upon which the motion is brought, and may be accompanied by a concise brief. No answer brief is required. There will be no specific motion day. When required, hearing of motions will be set on request of counsel or by motion assignment issued by the court.

The subject of filing versus service is, however, covered in a number of jurisdictions by specific local rules defining required filing times for affidavits used with Rule 12 and Rule 56, W.R.C.P., motions, and in some courts for other areas of pleading wherein the formal rule requirement relates directly to service and not filing times. 6 Moore's Federal Practice, supra, ¶ 56.14(1), p. 56–359.

Rule 5(d) and (e), W.R.C.P., as identical with the federal rule, states:

> "(d) *Filing.*—All papers after the complaint required to be served upon a party shall be filed with the court *either before service or within a reasonable time thereafter* [emphasis added].

> "(e) *Filing with the court defined.*—The filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court, except that the judge may permit the papers to be filed with him, in which event he shall note thereon the filing date and forthwith transmit them to the office of the clerk."

██ We hold that, in the absence of local written rules providing otherwise, when the affidavits have been served in compliance with the general rule requirement, concurrent presentation to the court at the commencement of the scheduled hearing on a motion for summary judgment under the purview of Rule 56 is sufficient so that the text of the affidavits will be considered by the trial court in order to determine whether there are specific facts showing that there is a genuine issue for trial. 10 Wright & Miller, Federal Practice and Procedure: Civil § 2738.

No prior Wyoming case distinguished the filing from required service. The cited

cases are not determinative of the issue we now address, *Harden v. Gregory Motors,* Wyo., 697 P.2d 283 (1985); *Larsen v. Roberts,* Wyo., 676 P.2d 1046 (1984); *DeHerrera v. Memorial Hospital of Carbon County,* Wyo., 590 P.2d 1342 (1979), since no evidence of earlier service was involved. The differentiation is not specifically discussed in the treatise by any rule stated. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). See 10 Wright & Miller, Federal Practice and Procedure, supra, § 2719.

Although not a summary judgment case, *Keohane v. Swarco, Inc.,* 320 F.2d 429, 431 (6th Cir.1963) discussed Rule 5(d), and stated:

> "In the 1937 preliminary draft of the Federal Rules of Civil Procedure proposed Rule 5(b) in part provided:

> > " 'When a time is prescribed for the service of a pleading or other paper, it shall be filed with the court as well as served within that time.'

> "This proposed rule was rejected. 2 Moore's Federal Practice Par. 5.10, p. 1352."

In support of the position which we take, see *Claybrook Drilling Co. v. Divanco, Inc.,* 336 F.2d 697 (10th Cir.1964); *Davis v. Parkhill-Goodloe Company,* 302 F.2d 489 (5th Cir.1962); 2 Moore's Federal Practice ¶ 5.10, p.5–38. The oft-cited case of *Beaufort Concrete Co. v. Atlantic States Construction Co.,* 352 F.2d 460 (5th Cir.1965), and see dissent on denial of certiorari, 384 U.S. 1004, 86 S.Ct. 1908, 16 L.Ed.2d 1018 (1966), relates to service and not filing:

> " * * * had not been served 'prior to the day of hearing.' " 384 U.S. at 1004, 86 S.Ct. at 1908, Black, dissenting.

* * * * * *

> "(b) At the time of filing a motion for summary judgment the movant shall designate and file relevant portions of the discovery documents relied upon. The opponents of a summary judgment motion shall designate and file relevant discovery documents within the time allowed by Rule 56, W.R.C.P."

---

Motions may be submitted on brief if desired. All motions not called up or set for hearing within 60 days after filing will automatically be denied, with 10 days then allowed for pleading."

Rule 302, Uniform Rules for the District Courts of the State of Wyoming reads:

"Discovery documents shall not be filed except:

## II

### *Propriety of Entry Of the Summary Judgment Order*

As a second issue of this appeal, we consider the propriety of the entry of the order by summary judgment for the grandparent visitation period of one month each summer in Oklahoma in the context of the record in evidence and the further sufficiency of the order itself in compliance with the grandparent visitation statute, § 20–2–113(c), W.S.1977, 1985 Cum.Supp.,[7] which provides:

> "(c) Subsequent to the death or remarriage of one (1) or both parents or after a divorce or judicial separation, the court may, upon petition of a grandparent, grant reasonable visitation rights to the grandparent of the children, if the court finds, after a hearing, that the visitation would be in the best interest of the child."

■ Considering the disposition of this appeal, it is unlikely that the same legal concerns will reoccur as are implicit in the question raised. May it suffice to say that the requirement of the statute "if the court finds, after a hearing, that the visitation would be in the best interest of the child," is mandatory, and requires both a hearing and a *written* finding of best interest. The record in this case, as created upon summary judgment disposition, lacks assurance of either the facts or the finding.[8]

## III

### *Case Status and Jurisdiction Process*

The third issue of this appeal, untested in this jurisdiction, is the pleading process whereby the grandparents seek to effectuate claimed visitation rights under the newly enacted statute, as now first litigated at a time after entry of the original divorce decree. The terminology of the statute may call into question whether the grandparents have any right to become involved until after the initial divorce has been concluded. "Subsequent to the death or remarriage * * * or after a divorce or judicial separation, the court may * * *." Section 20–2–113(c). Since the issue is not before us in this case, we decline to consider the question at this time, *Chicago & N.W. Ry. Co. v. City of Riverton*, 70 Wyo. 84, 247 P.2d 660 (1952), except to note that the Wyoming statute lacks the detail or specificity afforded in many other jurisdictions.

In this case, the paternal grandparents, as uncaptioned intervenors, enunciated the "visitation" claim under the statute by "petition" filed concurrently with the father in the divorce docket long after the original

---

7. The order provided by finding and decision: "IT IS, FURTHER, ORDERED that the petition filed by the paternal grandparents should be, and it hereby is, granted, and the grandparents are hereby awarded visitation with the parties' minor children for a period of 30 days, which is in addition to the visitation of the Defendant, and may be exercised in the locality of the grandparents' residence. *The grandparents shall provide written notification to the Plaintiff by May 1st of each year of the date when said visitation shall commence and when it shall terminate,* except for this year, and they shall notify the Plaintiff within two weeks of the date of this Order. Provided, however; that the visitation rights of the grandparents and the father shall not interfere with the regular schooling of the minor children." (Emphasis added.)

8. The children involved are two boys, ten and one half and twelve years of age. The unanswered question is whether their best interest will be adequately considered unless a guardian ad litem is appointed for their separate representation. Probably before summary judgment disposition could ever be utilized, guardian-ad-litem assistance would be required by Rule 17(c), Rule 55(b)(2) and Rule 56, W.R.C.P. The entire subject of guardian-ad-litem representation of the children in these custody-visitation situations well may be an appropriate subject for legislative review. See Rule 17(c), § 3–1–108, W.S.1977, and § 14–3–211, W.S.1977. In the *Matter of Parental Rights to Child X*, Wyo., 617 P.2d 1078 (1980). See *Petrey v. Petrey*, 127 Mich.App. 577, 339 N.W.2d 226 (1983); *Prock v. Morgan*, Tex.Civ.App., 291 S.W.2d 489 (1956). Under the order as entered, the grandparents would set the children's summer schedule without any mutuality of consideration or determination of convenience or appropriate time arrangement. All that the record contained was that the grandparents "have the desire and the facilities to care." That does not mean much for "best interest" as facts.

divorce decree entry, to effect a result of amending the prior custody orders and divorce decree.

The other 47 grandparent-visitation statutes are of various kinds and · character. Some specifically provide for rights of intervention pre-divorce, some specifically prohibit intervention pre-divorce, and other statutes and some cases specifically provide that an independent lawsuit is required.[9]

Four questions are raised which are novel in this jurisdiction and not answered by statute:

(1) May an independent action be used or is it required?

(2) Is intervention in a divorce proceeding permitted?

(3) Is compliance with Rule 24, W.R.C.P., required for intervention?

(4) Is intervention permissive or "of right"?

Complexities abound, including the simple question for trial resolution as to whether the grandparents' petition is simply a subterfuge to increase the period of partial custody or visitation for the noncustodial parent. *Shriver v. Shriver*, 7 Ohio App.2d 169, 219 N.E.2d 300 (1966); *Matter of Adoption by M*, 140 N.J.Super. 91, 355 A.2d 211 (1976).[10]

9. Compare the Wyoming statute as earlier quoted with § 15–5–24.2, General Laws of Rhode Island 1956, 1983 Cum.Supp.:

"In any divorce proceeding commenced before or after the effective date of this section, should the noncustodial parent fail to exercise his or her visitation rights with his or her minor children for any reason, or should the noncustodial parent have been denied said visitation rights, then the Family Court may, upon petition of a grandparent whose child is the noncustodial parent, grant reasonable visitation rights of said grandchild or grandchildren to said grandparent. The Court may issue all necessary orders to enforce such visitation rights,"

and § 25–4–52 through § 25–4–54, South Dakota Codified Laws 1984 Revision:

"The circuit court may grant grandparents reasonable rights of visitation with their grandchild, with or without petition by the grandparents, if it is in the best interests of the grandchild." Section 25–4–52.

"The grandparent of a child may petition the circuit court for grandchild visitation rights if:

"(1) The parents of the child are divorced or legally separated; or

"(2) An action for divorce or separate maintenance has been commenced by one of the parents of the child; or

"(3) The parent of the child, who is the child of the grandparent, has died.

"The circuit court may grant a petition for grandchild visitation rights only upon a finding that the visitation right to be granted is in the best interests of the child." Section 25–4–53.

"The provisions of §§ 25–4–52 to 25–4–54, inclusive, do not apply if the child has been placed for adoption with a person other than the child's stepparent or grandparent. Any grandparent visitation rights granted pursuant to §§ 25–4–52 to 25–4–54, inclusive, prior to placement for adoption of the child with persons other than the child's stepparent or grandparent shall terminate upon the placement of the child for adoption." Section 25–4–54.

Colorado has one of the more complex and interesting statutes, § 19–1–116, C.R.S., 1985 Cum.Supp. See *Kudler v. Smith*, Colo.App., 643 P.2d 783 (1981), *cert. denied* 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 78 (1982); and *In re Seright*, Colo.App., 649 P.2d 730 (1982).

State statutes are summarized in the Family Law Reporter, Bureau of National Affairs, State Divorce Laws, and the included chart would indicate that grandparent visitation statutes exist in all states except the District of Columbia and Nebraska, with an obvious error in the omission of Wyoming. The law in Maine has since been repealed. See discussion of individual state statutes in an excellent review in Note, *Grandparents' Statutory Right to Petition for Visitation: Vermont and the National Framework*, 10 Vermont L.Rev. 55 (1985). For a comprehensive analysis of each state law, see also Note, *The Constitutional Constraints on Grandparents' Visitation Statutes*, 86 Colum. L.Rev. 118 (1986).

10. The petition filed and the order entered in this case under the reasoned criteria of relevant cases may invoke partial custody and may not actually be visitation-rights in scope. *Application of Grover*, supra n.4. See *Tobler v. Tobler*, 78 Idaho 218, 299 P.2d 490 (1956); *Johnson v. Johnson*, 214 La. 912, 39 So.2d 340 (1949); *Ogden v. Ogden*, La.App., 220 So.2d 241 (1969); *Poole v. Poole*, La., 270 So.2d 215 (1972), *writ denied* 273 So.2d 295 (1973); *Urban v. Urban*, 149 Neb. 757, 32 N.W.2d 410 (1948); *Leithold v. Plass*, Tex., 413 S.W.2d 698 (1967). Cf. *McDonald v. McDonald*, La.App., 357 So.2d 1293 (1978) and *Doherty v. Mertens*, La.App., 326 So.2d 405 (1976). Attention is also directed to the consideration by the Wyomi.g Supreme Court in *Leitner v. Lonabaugh*, Wyo., 402 P.2d 713 (1965); *Butcher v. Butcher*, Wyo., 363 P.2d 923 (1961). It could be argued that this pro-

Doubling the Oklahoma visitation-custody, as in this case, could seem to test the limitations of judicial discretion and would only give fire to the litigative nightmare to which the families and these two boys have been subjected since the original decree was entered in 1979. Compare the factual situation with that in *Kudler v. Smith,* Colo.App., 643 P.2d 783 (1981), *cert. denied* 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 78 (1982).

Of paramount consideration is the present and future welfare of the children. Their welfare must be provided for with as little uncertainty as possible. All other considerations, including the wishes, rights and happiness of parents are subordinate thereto. *Nelson v. Murray,* 58 Del. (8 Storey) 516, 211 A.2d 842 (1965). See extensive case citations in Annot., 90 A.L.R.3d 222, 232, including appendix, with cases from 20 states.[11]

Cases on grandparent visitation are numerous and increasing. The Annotation at 90 A.L.R.3d 222, supra, encompasses 63 pages, with cases from 23 states, as numbering with the current supplement in excess of 100. At least a half dozen current law journal notes or comments can likewise be found on this subject. Various sociological developments in our current society can immediately be recognized.[12]

Case law and statutory precedent relating to all four procedural concerns can be found. Often the decision turns on the particular statute or a specific rule of procedure in that jurisdiction. No statute with the same phraseology as Wyoming's can be found in another state which would encompass precedential authority for determination of the decision to be made by this court.

■ Clearly, if we are to determine that the grandparents can advance their litigative interest in visitation through participation in the divorce case, then in some fashion an intervention process, either actual or pro forma, is required. See *School District No. 9 v. District Boundary Board,* Wyo., 351 P.2d 106 (1960). Lacking even a motion to intervene under Rule 24, we hold that the court lacked jurisdiction in this case to enter the order granting a specifically claimed statutory right of visitation in behalf of nonparties to the divorce proceeding.[13] Since jurisdiction was in-

ceeding was a custody action and consequently correctly pursued in a divorce case, see *Leitner v. Lonabaugh,* supra, and as such it did not invoke the visitation rights afforded by the grandparent-visitation statute. We will confine our consideration to the grandparent-visitation statute, and not pursue custody questions which have been raised by the scope and extent of the petition as filed. The grandparents' claim by petition specifically relied on § 20–2–113(c).

11. The best-interest criteria in grandparent visitation cases has a different substance as compared with parental rights which are deemed to include a constitutional essence. *Matter of Parental Rights of PP,* Wyo., 648 P.2d 512 (1982); *Meyer v. State of Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042, 29 A.L.R. 1446 (1923); *In re Marriage of Ebbighausen,* 42 Wash.App. 99, 708 P.2d 1220 (1985).

Lacking the constitutional overlay, grandparent visitation decisions can actually personify the judicial search for the best interest and welfare of the child. Gratification of wishes, and rights and happiness of relatives are subordinate. *Weichman v. Weichman,* 50 Wis.2d 731, 184 N.W.2d 882 (1971); *Nelson v. Murray,* supra; *Application of Grover,* supra n.4. Current

research suggests that stability may be primary. See thoughtful discussion in *In Interest of Tremayne Quame Idress R.,* 286 Pa.Super. 480, 429 A.2d 40 (1981). See also 86 Colum.L.Rev. 118, 128, supra n.9.

12. Excellent examples of current journal articles include: Note, *Grandparents' Statutory Right to Petition for Visitation: Vermont and the National Framework,* 10 Vermont L.Rev. 55, supra n.9; Ingulli, *Grandparent Visitation Rights: Social Policies and Legal Right,* 87 W.Va.L.Rev. 295 (1984–85); Foster and Freed, *Grandparent Visitation: Vagaries and Vicissitudes,* 23 St. Louis Univ. L.J. 643 (1979); Note, *Grandparent Visitation Rights in Georgia,* 29 Emory L.J. 1083 (1980).

13. We do not determine if a differing result on jurisdiction would have been appropriate if the court had elected by subsequent order to consider the original petition of March 21, 1985, to have constituted a motion to intervene pursuant to Rule 24, so that some court order made the grandparents parties in a lawsuit where they otherwise were not involved. *International Marine Towing, Inc. v. Southern Leasing Partners, Ltd.,* 722 F.2d 126 (5th Cir.1983), *cert. denied* ——

volved, it is further determined that the failure of the issue to be raised in either the trial court or by present brief is not waived under the purview of Rule 12(h)(3), W.R.C.P.:

"Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

*Pease Brothers, Inc. v. American Pipe & Supply Co.,* Wyo., 522 P.2d 996 (1974); *Steffens v. Smith,* Wyo., 477 P.2d 119 (1970).

Determining the intent of the legislature, analyzing the orderly process of the adjudicatory system in compliance with the rules of procedure, and the concurrent recognition of the need for expeditious resolution of the issues raised by the best interest of the child, do not easily afford an answer to the four questions raised.

As required for the further resolution of the litigative interests between the paternal grandparents and the mother, we would then address the four jurisdictional procedural questions earlier listed.[14] See Chicago & N.W. Ry. Co. v. City of Riverton, supra.

1. May an independent action be used or is it required?

 Clearly by the scope of the cases and the regularity of the process, an independent action may be used for the purpose of grandparent *visitation* litigation. We emphasize visitation since if the scope approaches a change of custody order, then provisions of § 20–2–113(c) may not apply

at all since the subsection relates only to "reasonable visitation." See *Commissioner ex rel. Shee v. Holewsky,* 316 Pa.Super. 509, 463 A.2d 480 (1983). " 'The right * * to go to see the child wherever he might be,' which does not include the right to take possession of the child." *Id.,* 463 A.2d at 483 n. 2, quoting from *Com. ex rel. Rosequist v. Rosequist,* 216 Pa.Super. 388, 268 A.2d 140, 143 (1970).

Cases supporting utilization of the independent action are extensive, and would include: *Girtman v. Girtman,* 191 Ga. 173, 11 S.E.2d 782 (1940); *Visitation of J.O.,* Ind.App., 441 N.E.2d 991 (1982); *Schumacher v. Schumacher,* Mo.App., 223 S.W.2d 841 (1949); *Hupp v. Hupp,* 238 Mo.App. 964, 194 S.W.2d 215 (1946); *Logan v. Smith,* Okla., 602 P.2d 647 (1979); *Zachary v. Zachary,* 155 Or. 346, 63 P.2d 1080 (1937);[15] *Prock v. Morgan,* supra.

Habeas corpus is a process frequently used and specifically approved for some states. See *Commonwealth ex rel. McDonald v. Smith,* 170 Pa.Super. 254, 85 A.2d 686 (1952); *Application of Grover,* supra; and numerous citations as an approved approach in New York State, e.g., *State ex rel. Herman v. Lebovits,* 66 Misc.2d 830, 322 N.Y.Supp.2d 123 (1971). We do not find that complex process of habeas corpus is necessary for this state. However, that litigation teaches that the indispensable parties are the custodial parent and the involved children who will become the subject matter of the court order.

---

U.S. ——, 105 S.Ct. 94, 83 L.Ed.2d 40 (1984); *Farina v. Mission Investment Trust,* 615 F.2d 1068 (5th Cir.1980); *Spring Construction Co., Inc. v. Harris,* 614 F.2d 374 (4th Cir.1980); *Securities and Exchange Commission v. Investors Security Leasing Corp.,* 610 F.2d 175 (3d Cir.1979); *State of Illinois v. Scarbaugh,* 552 F.2d 768 (7th Cir.), *cert. denied* 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); *Hourston v. Harvlan, Inc.,* 457 F.2d 1105 (3rd Cir.1972); *International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America v. Keystone Freight Lines,* 123 F.2d 326 (10th Cir.1941); *Walker v. Reynolds Metals Co.,* 87 F.Supp. 283 (D.Or.1949); *In re Elliott,* Cal., 144 Cal. 501, 77 P. 1109 (1904); *Mansfield Lumber Company v. Johnson,* Mo. App., 91 S.W.2d 239 (1935); *Dietrich v. Steam*

*Dredge,* 14 Mont. 261, 36 P. 81 (1894); 7A Wright & Miller, Federal Practice and Procedure: Civil § 1914, p.563; 3B Moore's Federal Practice, Rule 24(c), p.24–143; 59 Am.Jur.2d Parties § 172, p.604. Cf. *Macy v. Macy,* Wyo., 714 P.2d 774 (1986).

**14.** We would recognize that attention of the Permanent Rules Advisory Committee is well justified. However, in the absence of rule adoption or new statutory provision, our declaration is required for this case and others that will follow.

**15.** Oregon has since changed its process by statutory enactment, and even permits pre-decree "intervention", § 109.121, O.R.S.

Obviously, cases exist where intervention is not the answer since there may not be an active divorce proceeding, e.g., single-parent and death cases.

2. Is intervention post-decree permitted in the divorce proceeding?

This question is not susceptible to a dogmatic answer, and the authorities are not particularly helpful because of differing processes, rules and state statutes. In the absence of other legislation in Wyoming, we would find that normally the independent action could be utilized, but that cases may occur where the court, in its discretion, would permit intervention since the order may affect existing *custody* orders, or the proceedings might also involve issues to be properly litigated between the parents in regard to ancillary or separate questions, including custody or support payment.

Other examples of cases where intervention has proved to be effective include cases where the father or noncustodial parent is not able to actually exercise his separate visitation and it is intended that the grandparent would pursue that right in a representative capacity as, for example, absence in military service, or penitentiary confinement. *Solomon v. Solomon*, 319 Ill.App. 618, 49 N.E.2d 807 (1943).

The decision we adopt is an alternative between the nonintervention status of Oklahoma and the law permitting intervention now in effect in California by rule, and Oregon by present statute.[16]

3. Is compliance with Rule 24 required for intervention?

The answer is yes.

The orderly process for handling intervention is created by the rules of procedure, and no justification for omission in this type of case is demonstrated.

Rule 1, W.R.C.P., reads:

"These rules govern procedure in all courts of record in the State of Wyoming, in all actions, suits or proceedings of a civil nature, in all special statutory proceedings except as provided in Rule 81 * * *. They shall be construed to secure the just, speedy and inexpensive determination of every action."

School District No. 9 v. District Boundary Board, supra.

4. Is the intervention permissive or of right?

This court will also hold that intervention is permissive only, as determined within the discretion of the court when meeting the criteria for permissive intervention under Rule 24(c). By this result, it is determined that the independent action is normally available, although limited in its scope to the proper subject matter of the visitation statute,[17] and that intervention in the divorce docket is available upon a discretionary decision of the trial court.

If the proceeding utilized is by intervention in the existing divorce proceeding, then actual and not pro-forma representation of the children under the statute relating to decrees involving someone under the age of majority is also required. This is not intended to say that in every case a guardian ad litem would be required, but certainly the direct interest of the children, without the conflict of parental emotion, should be secured by primary representation. *Matter of Parental Right to Child X*, Wyo., 617 P.2d 1078 (1980).

In this case we find, in the absence of either a motion to intervene in the divorce case, Susan B. Nation, Plaintiff, v. David E. Nation, Defendant, Civil No. 46893, or the filing of an independent action whereby the minors are parties or are properly represented, that the district court lacked jurisdiction to enter the order from which the appeal was taken.

To summarize, we hold:

(1) In the absence of a local district court rule, with proper service, filing of respon-

---

**16.** We specifically do not address the right to intervene in either adoption or termination cases by this opinion.

**17.** Custody and visitation proceedings may occasion differentiations in the application of the "change of circumstance" rule.

sive affidavits in a summary-judgment proceeding is not required at any time prior to the commencement of the motion hearing.

(2) The provisions of § 20–2–113(c), W.S. 1977, 1985 Cum.Supp., require a hearing and written findings that visitation would be in the best interest of the child.

(3) Visitation claims under § 20–2–113(c), W.S.1977, 1985 Cum.Supp., may be litigated by independent proceedings; or, pursuant to the provisions of Rule 24(b), W.R. C.P., in the exercise of discretion of the court, when the requisite facts under the rule exist.

The decision of the trial court is reversed, and the case remanded to vacate entry of the order dated June 7, 1985 and entered June 10, 1985, and for such further proceedings as are not inconsistent with this decision.

Reversed.

MACY, Justice, dissenting.

The majority state that the trial court lacked jurisdiction to hear the grandparents' petition, because they did not move to intervene or file an independent action. I do not agree.

It is well established that the Wyoming Rules of Civil Procedure do not abridge, enlarge or modify the jurisdiction of the court but merely govern procedure. Rule 82, W.R.C.P.; *State ex rel. Frederick v. District Court of Fifth Judicial District in and for County of Big Horn*, Wyo., 399 P.2d 583, 12 A.L.R.3d 1 (1965).

In the present case the grandparents did precisely what the statute required them to do for the trial court to have jurisdiction. The procedural niceties may not have been strictly adhered to, but the court certainly had the discretion to hear the grandparents in the manner in which it did in the absence of an objection to do so. Exception must be taken to error relating to the pleadings if such error is to be preserved for consideration on appeal. 4 C.J.S., Appeal and Error § 325 (1957); *Snavely v. Snavely*, Tex.Civ.App., 445 S.W.2d 531 (1969).