463 A.2d 480

**COMMONWEALTH ex rel. Robert W. SHEE and Catherine P. Shee**

v.

**Richard A. HOLEWSKI and Mary Ann Holewski, Appellants.**

Superior Court of Pennsylvania.

Submitted Jan. 11, 1983.

Filed July 22, 1983.

---

510

George E. James, Beaver Falls, for appellants.

John J. Petrush, Beaver, for appellees.

Before CERCONE, President Judge, and POPOVICH and VAN der VOORT, JJ.

VAN der VOORT, Judge:

This case involves the petition of Robert W. and Catherine P. Shee for visitation with their grandchildren, Matthew and Richie Holewski. On January 30, 1981, the lower court heard the testimony of eight witnesses, and, on February 4, 1981, ordered the grandmother to undergo counseling with Family Services, and ordered Family Services to prepare a written report for the court. On May 7, 1981, after con-

sidering the report, the lower court awarded visitation to the grandparents and established a visitation schedule for 1981 and 1982. The father and adoptive mother, Richard A. and Mary Ann Holewski, have appealed to our court from this order. The case was submitted to this panel on January 11, 1983.

Catherine Shee was the mother of Elena Holewski, who died on July 13, 1977, leaving two children, Richie and Matthew. Their father, Richard Holewski, married his present wife, Mary Ann Holewski, on May 27, 1978, and the couple have lived with the two children in question and with two children of Mary Ann's first marriage since this date. In July of 1980, Mary Ann legally adopted Richie and Matthew. Through mid-1980, appellants permitted appellees to visit with their grandchildren, and apparently strived mightily to maintain friendly relations with the grandmother. The testimony indicates that there was no friction between appellants and the grandfather, and also that one of the grandmother's sons visited frequently and was generally on friendly terms with appellants, even after the grandparents filed the petition initiating this case. Discord apparently ensued from the grandmother's inability to accept the fact that her daughter was dead and that the children had a new mother. The grandmother frequently argued with appellants, and evidently repeatedly upset the children by telling them that they should not call Mary Ann their mother. The youngest child developed a speech impediment, which only began to subside when appellants discontinued sending the children to the grandparents' house for visits. The record is full of evidence upon which the lower court might have based a denial of the grandparents' (or at least the grandmother's) petition. The lower court, however, granted "visitation" (actually partial custody) to the grandparents.

■ The paramount concern in any child custody or visitation dispute is the welfare and best interests of the child. *Spells v. Spells*, 250 Pa. Superior Ct. 168, 175, 378 A.2d 879, 883 (1977). Applying this principle is frequently very difficult,

particularly when grandparents are involved. In *Com. ex rel. Flannery v. Sharp*, 151 Pa. Superior Ct. 612, 30 A.2d 810 (1943), the child's father died and the mother and child resided with the paternal grandparents for three years before the mother remarried. When the grandparents brought an action for partial custody, the lower court granted their petition, even though the testimony established the grandparents' "derogatory acts and conduct, their interference with the child's upbringing and the harmful effect upon the child." 151 Pa. Superior Ct. at 615, 30 A.2d 810. Our court reversed, stating:

> Despite the fact that grandparents may have become so deeply attached to a child that it will be a real hardship to be deprived of his society, sympathy for them cannot be permitted to interfere with the best interest and future welfare of the child.... Such custody, as between parent and grandparents, must be exclusive and uninterrupted, even to the refusal of visitations, when the welfare of the child is endangered by irreconcilable differences existing between them.

151 Pa. Superior Ct. at 617–18, 30 A.2d 810. In *Commonwealth ex rel. McDonald v. Smith*, 170 Pa. Superior Ct. 254, 85 A.2d 686 (1952), the mother died, and the child and father lived with the maternal grandparents for two years, until the father remarried. The lower court awarded custody to the father and partial custody to the grandparents. Noting the "deep and apparently irreconcilable animosity" that existed between the father and the grandparents, and finding that it would not be in the best interests of the child to subject her to an atmosphere of hate and estrangement, our court reversed that part of the lower court's order which granted partial custody to the grandparents.

More recently, our court struggled with the problem of grandparents' visitation with a child of a deceased child. In *Com. ex rel. Williams v. Miller*, 254 Pa. Superior Ct. 227, 385 A.2d 992 (1978), the child's mother died, and the maternal grandmother sought visitation, which was denied by the

514

lower court. In reversing the lower court, we attempted to set forth some general guidelines:

> When seeking visitation, a third party must show reasons to overcome the parent's prima facie right to uninterrupted custody. However, the reasons need not be so convincing as in a custody case .... In a visitation case, the third party need only convince the court that it is in the child's best interest *to give some time* to the third party. As the amount of time requested moves the visit further from a visit and closer to custody, the reasons offered in support of the request must become correspondingly more convincing.

254 Pa. Superior Ct. at 230, 385 A.2d 992 (emphasis in original).[1]

▮▮▮ Subsequent to the proceedings which took place in the lower court in the case before us, and subsequent to the decision in *Williams,* our legislature addressed the problem of visitation rights of grandparents when a parent has died. Section 12 of the Custody and Grandparents Visitation Act, Act of November 5, 1981, P.L. 322, No. 115, 23 P.S. § 1001, *et seq.,* now provides:

> If a parent of an unmarried child is deceased, the parents or grandparents of the deceased parent may be granted reasonable visitation rights to the unmarried child by the court upon a finding that visitation rights would be in the best interests of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the deceased parent and the child prior to the application.

Thus, parents of deceased children *may* be given reasonable *visitation* [2] rights with respect to children of such deceased

---

**1.** This language has been cited with approval in *Commonwealth ex rel. Zaffarano v. Genaro,* 500 Pa. 256, 261–62, 455 A.2d 1180, 1183 (1983).

**2.** The Act specifies "visitation" but does not define the term. We therefore assume that the legislature intended the "common meaning" of the term as found in *Com. ex rel. Rosequist v. Rosequist,* 216 Pa. Superior Ct. 388, 393, 268 A.2d 140, 143 (1970): "the right ... to go to

children, provided that: 1) such visitation will be in the best interests of the child, and 2) such visitation will not interfere with the parent-child relationship. It will therefore now be incumbent upon the lower courts to make specific findings as to these two issues when considering whether or not to grant visitation to grandparents in such situations.

 In the case before us, as indicated previously, the record contains sufficient testimony upon which the lower court could have based a denial of partial custody or visitation. The lower court, however, awarded partial custody to the grandparents. In doing so, it relied upon information which has not been provided our court. One of the children was interviewed in chambers, evidently with counsel and a stenographer present, but no notes of testimony of this proceeding were included with the original record. In addition, the written report of the local Family Services was not included. Under the circumstances, it is impossible for us to reach a decision in this case. In order to facilitate our review of such cases, the lower court *must* provide us with a *complete* record as well as a comprehensive opinion. *Com. ex rel. Newcomer v. King*, 301 Pa. Superior Ct. 239, 447 A.2d 630 (1982); *Hugo v. Hugo*, 288 Pa. Superior Ct. 1, 430 A.2d 1183 (1981).

 This case is remanded to the lower court. Since the grandchildren have evidently been visiting with the grandparents pursuant to the lower court's order, and since the record which has been provided us is now quite stale, we direct that additional testimony be taken on the effect of these visits on the children. The in-chambers testimony of the child Richie shall be transcribed and provided to our court along with the written report of the local Family Services. In accord with the terms of the new Custody and Grandparents Visitation Act discussed herein, the lower court shall make specific findings of fact as to: 1) whether visits with the grandparents would be in the best interests

see the child wherever he might be," which does not include the right to take possession of the child.

of the children, and 2) whether such visits would interfere with the parent-child relationship.

Remanded to the lower court with directions. Jurisdiction is retained.