# Kuntz v. Allen

*Richard D. Director,* for plaintiff.
*Edward H. Vermillion,* for defendant.

LAVELLE, *P.J.,* December 9, 1987 — This is a child custody case. The issue we are called upon to decide is whether a long absent father is entitled to visitation with his 13 year old daughter who is openly hostile to him and does not want to see him.

## PROCEDURAL HISTORY

This case originated in Northampton County in 1976. While the child was in the custody of plaintiff, William Allen, the mother initiated a custody proceeding and the Honorable Michael V. Franciosa awarded custody to Connie Allen who was still a minor under the supervision of her mother, Alice Diehl. The father was given broad visitation rights. Judge Franciosa's decision was based on application of the tender years doctrine which was the prevailing law in Pennsylvania at that time.

In July, 1985, the father filed a petition for contempt in Northampton County alleging he had been denied access in visitation with his daughter.

On August 9, 1985, Judge Franciosa entered an interim order for supervised visitation and ordered

the case transferred to Carbon County because the child had moved to Lehighton, Pa. with her mother.

On October 17, 1985, plaintiff filed a complaint for custody/visitation with this court and also filed a motion for special relief to continue the interim visitation. We entered an order granting plaintiff limited supervised visitation with his daughter at the Office of Children and Youth Services in Jim Thorpe, Pa. and scheduled a hearing on plaintiff's complaint for February 18, 1986.

On November 8, 1985, the mother filed a petition to terminate plaintiff's parental rights to his daughter. At the hearing on the termination petition, after testimony from the mother that she did not intend to marry or live with the proposed adoptive father, Robert Borgey, we deferred further hearing on the termination petition pending a hearing on plaintiff's custody/visitation complaint.

On February 18, 1986, the parties appeared for a hearing. Before the hearing began, the parties entered into an agreement for expanded supervised visitation between plaintiff and his daughter. The visitation was to last for approximately five months after which it would be reviewed. This agreement was never signed by the mother and an order was never entered.

After consideration of the testimony taken at the hearing on October 8, 1986 and the evidence admitted by stipulation of counsel on July 1, 1987, and reviewing the proposed findings of fact and conclusions of law submitted by counsel, we make the following findings of fact in narrative form.

## FINDINGS OF FACT

(1) Shannon Marie Allen, a minor, was born on August 5, 1974, and is presently 13 years of age.

(2) Plaintiff, William M. Allen III, is the natural father of Shannon Allen.

(3) Plaintiff currently resides at 3546 Linden Street, Allentown, Pa. with his wife, Elizabeth Allen, and two minor children, James, age 4 and Jessica, age two and a half. Plaintiff and his wife have been married since August of 1982.

(4) Connie Allen is the natural mother of the minor child, Shannon Allen. She has been the custodial parent of said child since December 14, 1986, pursuant to an order of court entered in Northampton County, Pennsylvania. The order also granted visitation rights to plaintiff and provided that Connie Allen was to continue to reside with her mother in Lehighton, Pa.

(5) Connie Allen presently resides at 148 Bankway Street, Lehighton, Pa., with the minor child, Shannon Allen, and another minor child, Eumir Aaron.

(6) Connie Allen is presently unmarried and exhibits a deep seated and seething animosity toward plaintiff.

(7) Plaintiff resides in a single family home consisting of a living room, dining room and kitchen on the first floor and three bedrooms and a bath on the second floor. The home has been recently remodeled by plaintiff.

(8) Plaintiff has been employed at Bethlehem Steel Corporation in Bethlehem, Pa., for 14 years as a general laborer. His current work day is from 6:30 A.M. to 2:30 P.M.

(9) Plaintiff is a recovering drug and alcohol abuser and has been drug and alcohol free for at least seven years. He continues to attend meetings of Narcotics Anonymous and is the regional service representative for this area for this organization.

(10) The home environment of plaintiff is stable and there is no evidence that plaintiff suffers from mental or moral deficiencies at the present time.

(11) Shannon is openly hostile to plaintiff and does not want him in her life.

## DISCUSSION

The paramount concern of the court in any case involving the custody or visitation of children is the welfare and best interest of the child. *Niadna v. Niadna,* 343 Pa. Super. 298, 494 A.2d 856 (1985); *Commonwealth ex rel. Shee v. Holewski,* 316 Pa. Super. 509, 463 A.2d 480 (1983); *In re Struck,* 291 Pa. Super. 61, 435 A.2d 219 (1981); *Spells v. Spells,* 250 Pa.Super. 168, 378 A.2d 879 (1977). All other considerations, including the rights of parents, are secondary and subordinate to a child's physical, intellectual, moral, spiritual and emotional well-being. *Constant A. v. Paul C.A.,* 344 Pa.Super. 49, 496 A.2d 1 (1985); *Brooks v. Brooks,* 319 Pa.Super. 268, 466 A.2d 152 (1983).

However, to the extent that it is consistent with the child's well-being, the court must also respect and preserve the right of the non-custodial parent to develop or continue a relationship with his or her child. *Auman v. Eash,* 228 Pa.Super. 242, 323 A.2d 94 (1974). Under normal circumstances, the courts of this commonwealth "do not sanction the estrangement of a child from either parent". *Niadna v. Niadna, supra,* 343 Pa.Super. at 302, 494 A.2d at 858; citing *Commonwealth ex rel. Newcomer v. King,* 301 Pa.Super. 239, 247, 447 A.2d 630, 634 (1982).

The cases in which visitation has been permanently denied have been those in which severe moral or mental deficiencies of the parent have constituted a real and grave threat to the welfare of the

child. *Niadna v. Niadna, supra; Somers v. Somers,* 326 Pa.Super. 556, 474 A.2d 630 (1983); *Commonwealth ex rel. Peterson v. Hayes,* 252 Pa.Super. 487, 381 A.2d 1311 (1977). In the present case, although the father has a history of drug and alcohol abuse, the evidence presented to us indicates that he is recovering and has been drug and alcohol free for seven years. Therefore, we find that the father presently suffers from no mental or moral deficiencies as would result in a denial of his right to establish a relationship with Shannon.

Further, although the father has been long absent from Shannon's life, this is also insufficient to deny him visitation. "[T]he fact that a parent has delayed in asserting his or her rights of visitation will not serve as a bar to the right to visit with his or her child." *Niadna v. Niadna, supra,* 343 Pa.Super. at 302, 494 A.2d at 858.

However, this case is complicated further by the fact that Shannon does not want to see her father. We are cognizant that the fact that a child does not want to see a parent is also not sufficient to deny that parent visitation with his or her child. *Nancy E.M. v. Kenneth D.M.,* 316 Pa.Super. 351, 462 A.2d 1386 (1983); *Hoffer v. Hoffer,* 301 Pa.Super. 289, 447 A.2d 972 (1982). For instance, in *Commonwealth ex rel. Lotz v. Lotz,* 188 Pa.Super. 241, 146 A.2d 362 (1958), affirmed, 396 Pa. 287, 152 A.2d 663 (1959), a 13-year-old girl refused to visit her father because he had once struck her during a visit. *Id.* The mother contended that any visits should not be permitted because they would emotionally upset the child. *Id.* The court, nonetheless, ordered visitation to continue. *Id.* However, this case is distinguishable from *Lotz* and a different result is mandated.

In the present case, unlike *Lotz,* there was expert testimony concering the detrimental effect visitation would have on Shannon's well-being. Thaddeus M. Midas, Ph.D., a clinical psychologist who examined the parties and the minor child, rendered the following opinion:

"I do believe that a relationship between Mr. Allen and his daughter can possibly be nurtured. It would take much energy and patience on the part of Mr. Allen and the process would be slow. I do, firmly, suggest that the wishes and feelings of Shannon Allen be heard loudly and be respected. She has been placed in an awkward position and she perceives this situation as a threat and intrusion. She is angry that unknown forces (court, lawyers, etc.) can control her life. She has been put on the defensive from the start and until these walls are lowered, she will not respond favorably. Giving Shannon as much time as she needs, and listening to what she says with the least amount of interference and distraction is a good start. Unfortunately, the parties involved are unable to work together. For this reason, intervention by a counselor or therapist with familiarity in these situations and a background with children and adolescence is best indicated — I do not suggest immediate or open visitation. Perhaps it would be best to start with letters, cards and telephone contacts. Therapeutic intervention can start immediately, but sessions would be individualized until objectives are satisfied and agreements made. Joint sessions may follow afterwards. I believe this to be the best approach based on the circumstances. Aggressive efforts may lead to immediate legal visitation, but I believe the results would lead towards frustration, conflict and withdrawal by Shannon."

Having no testimony or evidence presented to us

which would rebut Dr. Midas' opinion of the detrimental effect visitation might have on Shannon, we have no hesitancy in finding that immediate and open visitation would not be in Shannon's best interest at this time.

Although, as a general rule, it is against public policy to limit the relationship between parent and child, *Lotz, supra; In re Duckworth,* 188 Pa.Super. 232, 146 A.2d 365 (1959), here, we believe that Shannon's welfare and best interests would be served by limiting, on a temporary basis, the contacts between Shannon and her father to telephone calls, letters and cards. This will provide an opportunity for a relationship between Shannon and her father to be nurtured, thus respecting the father's right not to be estranged from his daughter and promoting this strained relationship to improve, while curcumventing the present potential of a negative impact on Shannon's overall psychological and emotional welfare. In our view, this restriction is necessary to protect Shannon and is the least intrusive on the relationship between Shannon and her father which is consistent with Shannon's well-being.

As with all visitation orders, this one is temporary in nature. *In re Struck, supra;* citing *Friedman v. Friedman,* 224 Pa.Super. 530, 307 A.2d 292 (1973) (visitation rights are within the supervision of the courts on a continuing basis). In time, with cooperation, understanding and sensitivity from all the parties, the relationship between Shannon and her father may develop to a point where open visitation would be in Shannon's best interest. At that time, we would be in a position to modify this order to permit open visitation between Shannon and her father.

## CONCLUSIONS OF LAW

(1) The court has jurisdiction over the parties and subject matter of this action.

(2) It would not be in Shannon's best interest to provide the father with partial custody at this time.

Based on the foregoing findings of fact and conclusions of law, we enter the following

## ORDER

And now, this December 9, 1987, it is hereby ordered and decreed as follows:

(1) The prayer of defendant, William M. Allen III, as to custody of Shannon Marie Allen is denied.

(2) The prayer of defendant, William M. Allen III, as to open visitation with Shannon Marie Allen is denied.

(3) Contact between defendant, William M. Allen III, and Shannon Marie Allen will be limited to the following:

(a) Telephone communication shall be permitted at reasonable times.

(b) Letters and cards shall be permitted.